# EXHIBIT A

CSL

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br><br>2013-38537-CA-31 |
|---|---|---|

| PLAINTIFF(S) / Third-Party<br><br>EDDIE BODDEN, FELIZ TERRERO, FRANCISCO ORTEGA, MARCELINO SUSANA, VICTOR LACAYO LOPEZ, and JULIO BRINGUEZ | VS.  DEFENDANT(S) / Third-Party<br><br>FRENKEL & CO, LLC. | SERVICE |
|---|---|---|

ESQUIRE EXPRESS, INC.

Esq Job  2017000734
Srvc Date  5/24/17   Time  10:45am
By Serving  Lyschire Geers
As  Managing/Agent   Type
Server  FSD
Cert No.  5/09/85   In The _____ Judicial Cir
Married  Y  N   Military  Y  N
CLOCK IN

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and copy of the complaint or petition in this action on defendant(s):  FRENKEL & CO., LLC.

By Serving Registered Agent:

CORPORATION SERVICE COMPANY

2711 Centerville Road, Suite 400, Wilmington, DE  19808

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  WILLIAM G. WOLK, Esq.

whose address is:  2 South Biscayne Blvd., Suite 1200

Miami, FL 33131

within 20 days " Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days." after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| HARVEY RUVIN<br>CLERK OF COURTS | BY: | MARIA ZALDIVAR #8105<br><br>DEPUTY CLERK | MAY 2 3 2017<br>DATE |
|---|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
### ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

CLK/CT 314 Rev. 01/11                              Clerk's web address: www.miami-dadeclerk.com

Filing # 53044501 E-Filed 02/27/2017 06:53:49 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI- DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO: 13-38537 CA 31

EDDIE BODDEN,
FELIZ TERRERO,
FRANCISCO ORTEGA,
MARCELINO SUSANA,
VICTOR LACAYO LOPEZ, and
JULIO BRINGUEZ,

       Plaintiffs,

vs.

SUNCOAST SHIPPING, LLC

       Defendants.

_____/

EDDIE BODDEN, FELIZ TERRERO,
FRANCISCO ORTEGA,
MARCELINO SUSANA,
VICTOR LACAYO LOPEZ, and
JULIO BRINGUEZ, individually and
as assignees of SUNCOAST SHIPPING, LLC

       Plaintiffs/Third-Party Plaintiffs,

vs.

FRENKEL & CO, LLC

       Third-Party Defendant.

_____/

## CORRECTED SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiffs EDDIE BODDEN, FELIZ TERRERO, FRANCISCO ORTEGA, MARCELINO SUSANA, VICTOR LACAYO LOPEZ, and JULIO BRINGUEZ,

individually and as assignees of SUNCOAST SHIPPING LLC ("Suncoast") hereby sue Defendant FRENKEL & CO, LLC ("Frenkel") and state:

## PARTIES

1.      At all material times hereto, Plaintiffs EDDIE BODDEN, VICTOR LACAYO-LOPEZ, FELIZ TERRERO, FRANCISCO ORTEGA, MARCELINO SUSANA, and JULIO BRINGUEZ were foreign nationals employed by Suncoast in the State of Florida. Bodden was employed as captain and master of the tug "Billy G" and cargo barge "Flag 4000;" the others as ordinary seamen and, more specifically, as the five crew members of the tug Billy G.[1]   All plaintiffs are over the age of 18 and otherwise *sui juris*.

2.      Defendant SUNCOAST SHIPPING LLC ("Suncoast") was and is a Florida for-profit shipping company, headquartered in Fort Pierce, Florida.

3.      Suncoast's principal business is operating tug boats, barges, and cargo/container ships in Florida and the Caribbean.

4.      At all times material hereto, Suncoast operated, controlled, managed, and maintained the tug Billy G and the barge Flag 4000 through management, joint venture and/or bareboat charter agreements.

5.      Defendant FRENKEL & CO, LLC ("Frenkel") is a Delaware corporation, headquartered in New York, with business offices in New Jersey, New York, Los Angeles and Boston.

6.      Frenkel is a maritime insurance broker and, although doing substantial business in the State of Florida, is not licensed nor registered to do business in this State.

---

[1]   Eddie Bodden and Victor Lacayo-Lopez are citizens of Honduras; Feliz Terrero, Francisco Ortega, and Marcelino Susana are citizens of the Dominican Republic, and Julio Bringuez is a citizen of Guatemala

7.      Frenkel's New Jersey office, acting as agent for Suncoast, procured the maritime insurance policy at issue in this lawsuit for Suncoast and delivered said policy to Suncoast in Florida, as more fully set forth below.

8.      Both at the time of the events that give rise to this lawsuit, and for at least 10 years' prior, Frenkel conducted substantial regular business activities in the State of Florida in the course of insuring vessels operated by Suncoast and other Florida shipping companies and businesses.

9.      During this period and at all material times, Frenkel and its employees, including its Vice President John Toscani, had extensive business correspondence with Suncoast inside the State of Florida for the procurement of insurance for Suncoast and the servicing of the Suncoast account.  Frenkel also participated in handling the Florida insurance claims that underpin this action.

10.     Plaintiffs Bodden, Lacayo-Lopez, Terrero, Ortega, Susana, and Bringuez are the assignees of Suncoast's rights of action against Frenkel pursuant to a consent settlement agreement dated March 4, 2016, which is of record with this Court, and attached as **Exhibit 1** (the Consent Agreement).

## JURISDICTION AND VENUE

11.     This is action for damages in excess of $15,000.00, exclusive of interest, attorney's fees, and costs.

12.     The Eleventh Judicial Circuit in and for Miami-Dade County, Florida, has subject matter jurisdiction over this action pursuant to Art. V, § 5 of the Florida Constitution.

13.     Venue is proper in Miami-Dade County pursuant to Florida Statutes § 47.011 because the principal action in which the underlying judgment was entered was venued in this Court.

14.     Defendant Frenkel is subject to personal jurisdiction by this Court pursuant to Florida Statute § 48.193(1)(a) by virtue of its contract with Suncoast to procure insurance for vessels operating from ports in the State of Florida, to wit: The Billy G and Flag 4000, and by virtue of its substantial and not isolated business activities within the State of Florida in connection with the provision of insurance and insurance services to Suncoast and other businesses in this State. *See Naviera Mayaca Exp. S. de R.L. v. Brauer & Associates, Inc.*, 559 So. 2d 1230 (Fla. 3d DCA 1990).

15.     Frenkel is also subject to personal jurisdiction pursuant to Florida Statute § 48.193(f)1, since the Defendant's negligent failure to procure appropriate insurance for Suncoast's vessels caused injury to Suncoast within the State of Florida and, at about the time of the injury, the Defendant was engaged in business activities within the State.

16.     All conditions precedent to this action have been performed, excused, or waived.

## FACTS COMMON TO ALL COUNTS

17.     At all times material hereto, Suncoast operated, controlled, managed, and maintained the tug "Billy G" and the barge "Flag 4000" through joint venture agreements, leases, and/or bareboat charter agreements.

18.     Suncoast operated, controlled, and managed the Billy G by agreement of the vessel's owner Safco Shipping Co. SA and Safeco's principal Saul Fashka.

19.     Suncoast operated, controlled, and managed the barge Flag 4000 through a bareboat charter agreement with its owner Flag Container Services, Inc.

20.     Suncoast was not, however, the owner of the Billy G – a fact that was readily apparent by reference to any one of the readily available commercial ship registration databases, like the World Shipping Database, or even by reference to publicly available websites like Vesselfinder.com.[2]

21.     All sea-going merchant ships like the Billy G are assigned an identification number, called an "IMO number," pursuant to the International Convention for the Safety of Life at Sea.  A ship's IMO number consists of the three letters "IMO" (for International Maritime Organization) followed by a unique seven-digit number.  The IMO number remains linked to the hull for its lifetime, regardless of a change in name, flag, or owner.

22.     IMO numbers are assigned by IHS Maritime & Trade (formerly known as Lloyd's Ships Registry).  It is the sole global issuing body of the IMO Ship, Company, and Registered Owner numbering system.

23.     IHS publishes vessel registration and ownership information for all ships of 100 gross tons and larger in the printed Lloyd's Register of Ships.  Its online database of ship information – the World Register of Ships – is searchable by either IMO number or vessel name, among other information.     It too contains complete vessel registration and ownership information.

24.     The foregoing was common knowledge within the maritime insurance brokerage industry.

25.     In fact, one of the primary purposes for, and uses of, the IHS ships registry database is to provide accurate, independent information for maritime insurance.

---

[2]     See, e.g., http://www.vesseltracking.net/ship/billy-g-8980854

26.     For that reason, it is standard industry practice by maritime insurance brokers, including Frankel, to use the IHS ships registry database (and other databases) to verify vessel information, including ownership information, before placing insurance.

27.     This is especially important because marine insurers base their premiums in part whether a ship is owned, chartered, or leased and may void insurance coverage if ownership information is not accurately reported by the broker – a fact well known to Frenkel and other marine insurance brokers.

28.     The IHS ships registry database can be searched by vessel name, IMO number, or a host of other information.

29.     The Billy G's IMO number was IMO 8980854.

30.     Safco Shipping Co. SA ("Safco") is correctly listed as the Billy G's owner in the IHS ships registry database and other ships registry databases commonly used by the maritime insurance industry, whether those sources are searched by its name or IMO number.

31.     In early 2013, Suncoast entered into a voyage agreement with Brave Cargo Shipping Inc. to use the Billy G and Flag 4000 to ship cargo from Fort Pierce, Florida, to the port of Gonaives, Haiti.

32.     Suncoast thereafter set out to assemble a crew for the voyage – the Plaintiffs herein – and to obtain appropriate insurance for the vessels and crew.

33.     To that end, Suncoast's president Jean Rouzier contacted with John Toscani at Frenkel's New Jersey office.

34.     Suncoast thereafter entered into an oral contract with Frenkel for the placement of insurance on the Billy G and Flag 4000 and its crew, and Frenkel became Suncoast's agent for this purpose.

35.     The contract was to be performed in Florida by delivery of insurance for the vessels and voyage departing from Fort Peirce, Florida, to Suncoast at its offices in Port St. Lucie, Florida.

36.     Founded in 1878, Frenkel held itself out to the public – and to Suncoast in particular – as an expert marine insurance brokerage and "a trusted resource for marine insurance products of all kinds."  Frenkel website at http://www.frenkel.com/marine-2/.

37.     As stated by Frenkel itself:

> We specialize in complex assessment inherent to marine risk management. Frenkel marine brokers understand that a standard form does not meet the demands of marine insurance clients. We design in house programs that utilize the most current and innovative manuscript forms. The result is cost efficient long term insurance solutions.
>
> Frenkel Marine Insurance clients are not just customers---we view them as partners in risk
>
> Our value added services extend well beyond the traditional insurance policy purchase. Frenkel Marine Brokers work with clients, initiating contract reviews, providing advice on insurance specifications, and making indemnification recommendations that set us apart from other brokers.
>
> Frenkel Marine's experience and global reach make it possible for us to access markets domestically and overseas. Our clients know that their marine insurance needs are closely monitored from the time of policy placement through Frenkel's in house claim process

*Id.*

38.     Suncoast contacted Frenkel because of Frenkel self-professed expertise in the field of maritime insurance, and because Toscani and Frenkel has placed insurance in Florida for other Suncoast vessels and voyages originating in this State.

39.    As Frenkel knew, Suncoast had no expertise in maritime insurance and therefore relied on Frenkel's superior expertise as a maritime insurance broker to help it with the application process and to procure appropriate insurance for the voyage.

40.    Defendant Frenkel agreed to provide Suncoast with the benefit of its expertise in insurance coverage and risk assessment and to procure insurance suitable to Suncoast's needs.

41.    Suncoast readily provided Frenkel with all of the information that Frenkel told Suncoast it needed in order to procure insurance for the voyage, including the identity and ownership of the vessels involved (the Billy G and Flag 4000); the Billy G's IMO number; the cargo; the departure point and destination; the captain and the number of crew.

42.    Suncoast also made the vessels available for an in-person inspection arranged by Frenkel.

43.    Frenkel ultimately placed Suncoast's insurance with Travelers Property Casualty Company of America ("Travelers").

44.    In so doing, Frenkel incorrectly told Travelers that Suncoast was the owner of the Billy G.

45.    Frenkel knew, or reasonably should have known, of its error based on the ownership information provided by Suncoast; its review of the ships registry database information for the Billy G; or even the fact that Saul Fashka and Safco Shipping Co. paid Frenkel's bill.

46.    However, Frenkel did not correct this mistake.

47.    In reliance on Frenkel's misstatement about the Billy G's ownership, Travelers issued Marine Hull and Protection & Indemnity Policy No. ZOH-15N 1 1069-13-ND to Suncoast on or about June 9, 2013 (attached as **Exhibit 2**).

48.     The Travelers policy was delivered to Suncoast at its offices in Port St. Lucie, Florida, with a copy to Frenkel at its offices in Jersey City, New Jersey.  The policy contained Florida specific provisions, including collection of Florida's CAT fund surcharge.

49.     The Plaintiffs were the intended third-party beneficiaries of the protection and indemnity coverage part of the Travelers policy, which provided coverage for personal injuries, maintenance and cure, and other damage and wage claims.

50.     At about this time, the Billy G ran out of fuel during its voyage from Fort Pierce, Florida, to Gonaives, Haiti, and became adrift near Moa, Cuba.[3]

51.     The Cuban Coast Guard towed the stricken vessels to the Port of Moa, where the Plaintiffs remained marooned without money, food, or medical treatment for nearly a year until they were repatriated.  Suncoast even stopped paying their wages.

52.     During their year in Cuba, the Plaintiffs ate rats and insects to survive.  Victor Lacayo Lopez suffered a debilitating stroke; Julio Bringuez badly fractured his arm; and the others suffered physical and mental injuries as a result of their hardship, deprivation, and confinement.  None received necessary medical treatment.

53.     As a result, in December 2013, the captain and crew of the Billy G filed the instant action against Suncoast.

54.     The Plaintiffs' claims were covered by the protection and indemnity section of the Travelers' policy.

55.     Suncoast notified Travelers of the claim, and, on March 20, 2014, defense counsel appointed by Travelers entered an appearance for Suncoast.

---

[3]   Because the process of procuring the insurance took so long, the Billy G and Flag 4000 had actually set sail before Travelers issued the subject insurance policy.  Travelers therefore wrote the June 9, 2013, policy with coverage retroactive to February 6, 2013.

EATON & WOLK PL
2 SOUTH BISCAYNE BOULEVARD · SUITE 3100 · MIAMI, FL 33131 · (305) 249-1640

56.     Then, on September 5, 2014, Travelers filed an action for declaratory relief in the United States District Court for the Southern District of Florida (Case No. 14-14360-civ-Middlebrooks/Lynch) seeking to void the entire policy that Frenkel had procured for Suncoast.

57.     Travelers alleged that Suncoast had materially misrepresented its ownership of the Billy G and that had it (Travelers) known that the Billy G was a leased vessel, it would not have insured the tug.

58.     Suncoast contacted Frenkel for assistance rebutting the declaratory judgment action; but Frenkel declined to help.

59.     On May 18, 2015, the District Court agreed with Travelers and entered judgment voiding the insurance policy *ab initio.* (See **Exhibit 3**.)

60.     Frenkel's errors had cost Suncoast its insurance coverage.

61.     On August 25, 2015, the Plaintiffs and Suncoast attempted unsuccessfully to mediate the underlying dispute.

62.     For the next six months, the parties continued their negotiations, ultimately reaching the arms-length settlement memorialized in the Consent Settlement Agreement attached as Exhibit 1.

63.     Pursuant to the terms of the Consent Agreement, Suncoast consented to entry of a $3 million judgment against it, and assigned its claims against Frenkel to Plaintiffs Bodden, Lacayo-Lopez, Terrero, Ortega, Susana, and Bringuez.

64.     This lawsuit now ensues.

EATON & WOLK PL
2 SOUTH BISCAYNE BOULEVARD · SUITE 3100 · MIAMI, FL 33131 · (305) 249-1640

## COUNT I
## NEGLIGENCE – ERRORS & OMISSIONS

65.    Plaintiffs incorporate and reallege the allegations contained in Paragraphs 1 through 64 above and further state:

66.    As an expert insurance broker and as Suncoast's agent, Frenkel had a duty to provide competent insurance services to Suncoast consistent with the prevailing standard of care for similarly situated maritime insurance brokers.

67.    As part of this duty, Frenkel was responsible for obtaining pertinent vessel ownership and lease information from its clients, including Suncoast; verifying vessel information, including ownership, by reference to the ships registry data that Frenkel had access to and routinely used for this purpose; and accurately reporting its clients' vessel ownership and lease information to prospective insurers.

68.    Had Frenkel simply referred to the HIS vessel registration database, it would have known that the tug Billy G was owned by Safco, not Suncoast.

69.    However, Frenkel was negligent and breached its duty to Suncoast by, *inter alia*, one or more of the following errors and omissions:

   a.  Failing to obtain accurate ownership information for the Billy G from Suncoast;

   b.  Failing to use the IHS ships registry or any other industry standard ships registry database to look up the ownership information for the Billy G;

   c.  Failing to provide accurate ownership information for the Billy G to Travelers; and

   d.  Providing Suncoast with a defective policy of insurance subject to cancelation.

70.     Had Frenkel provided accurate ownership information to Travelers, either Travelers or another insurer would have issued the insurance requested by Frenkel – just at a different premium – and said insurance would have covered Plaintiffs' claims and damages.

71.     However, as a direct and proximate result of Frankel's negligence, Suncoast and the Plaintiffs were instead left without insurance coverage for their losses.

72.     As Suncoast's agent, Frenkel stands in Travelers' shoes and is liable for those losses to full extent of the Travelers' policy limits.

**WHEREFORE**, Plaintiffs EDDIE BODDEN, VICTOR LACAYO-LOPEZ, FELIZ TERRERO, FRANCISCO ORTEGA, MARCELINO SUSANA, and JULIO BRINGUEZ demand judgment against Defendant FRENKEL & CO. LLC for damages in excess of this Court's jurisdictional limit of fifteen thousand ($15,000.00) dollars, exclusive of interest, costs, and attorney's fees; pre- and post-judgment interest; taxable costs, and such other and further relief as this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT

73.     Plaintiffs incorporate and reallege the allegations contained in Paragraphs 1 through 64 and in Paragraph 70 above and further state:

74.     Suncoast and Frenkel entered into an oral or implied contract for the purchase of marine and protection and indemnity insurance on the Billy G and Flag 4000 for its voyage from Fort Pierce, Florida and Gonaives, Haiti.

75.     Pursuant to that contract, and in consideration for the moneys paid to Frenkel by or on behalf of Suncoast, Frenkel was to procure valid and collectable insurance with the terms and limits reflected in the Travelers policy attached as Exhibit 2.

76.     Frenkel materially breached its contract with Suncoast by procuring insurance that was neither valid nor collectable.

77.     As a direct and proximate result of the Defendant's breach of its fiduciary duty to Suncoast, judgment was entered against Suncoast, and Plaintiffs sustained uninsured losses in excess of $1 million, not including pre- and post-judgment interest.

**WHEREFORE**, Plaintiffs EDDIE BODDEN, VICTOR LACAYO-LOPEZ, FELIZ TERRERO, FRANCISCO ORTEGA, MARCELINO SUSANA, and JULIO BRINGUEZ demand judgment against Defendant FRENKEL & CO. LLC for damages in excess of this Court's jurisdictional limit of fifteen thousand ($15,000.00) dollars, exclusive of interest, costs, and attorney's fees; pre- and post-judgment interest; taxable costs, and such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs further demand trial by jury of all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on February 27, 2017, using the Florida ePortal electronic filing system, which shall serve copies by email on all current parties.  New parties shall be served with this Second Amended Complaint in the time and manner specified by the Florida Rules of Civil Procedure.

Respectfully submitted,

THE VUCCI LAW GROUP, PA
*Attorneys for Plaintiffs*
8101 Biscayne Boulevard
Suite 311
Miami, Fl. 33138
Telephone: 305-573-0125
Facsimile: 786-536-7799
Louis@thevuccilawgroup.com

By: LOUIS A. VUCCI, ESQ.
    Fla. Bar No: 131581

and

EATON & WOLK, PL
*Co-counsel for Plaintiffs*
2 South Biscayne Boulevard
Suite 3100
Miami, Florida 33131
Telephone:  305-249-1640
Facsimile:  786-221-1759
Email: wwolk@eatonwolk.com
       cmartinez@eatonwolk.com

By: _____
    WILLIAM G. WOLK
    Florida Bar No. 103527

## CONSENT SETTLEMENT AGREEMENT

EDDIE BODDEN, FELIZ TERRERO, FRANCISCO ORTEGA, MARCELINO SUSANA, VICTOR LACAYO LOPEZ, and JULIO BRINGUEZ ("Plaintiffs") and Suncoast Shipping, LLC ("Suncoast" or "Defendant") hereby enter into this Settlement Agreement on February ____, 2016, as follows:

WHEREAS, Defendant was the lessee and/or operator and/or managed and/or maintained and/or controlled the vessel, The "Billy G", and/or was the bareboat charterer and/or was the owner *pro hac vice* thereof in coastwise, inter-coastal and foreign commerce.

WHEREAS, on or about June 8, 2013, the "Billy G" was sent to sea with insufficient fuel to reach its destination, causing the boat to run out of fuel in Cuban waters.

WHEREAS, the Plaintiffs were stranded in Cuba as a result, without pay, needed medical care, food, provisions and supplies, and the necessities of daily living.

WHEREAS, On December 16, 2013, the Plaintiffs sued Suncoast in Miami-Dade Circuit Court, Case No. 13-38537 CA 31 (the "Seaman's lawsuit") the allegations of which lawsuit are incorporated herein by reference and are admitted to by Suncoast; and

WHEREAS, Suncoast had requested appropriate insurance for the Billy G and its barge/cargo from Frenkel and Company, LLC, including coverage for all claims alleged in the Seaman's Lawsuit, to wit: actions under the Jones Act, 46 U.S.C. § 688 *et seq.*; actions for maintenance and cure; actions for unseaworthiness; and actions for failure to provide prompt and adequate medical treatment, among other actions under the General Maritime law of the United States; and had provided Frenkel and Company, LLC with all of the information requested by Frenkel and Company, LLC to provide this coverage, including all information about the Billy G, its crew, and its intended voyage;

Page 1 of 9

EXHIBIT 1

WHEREAS, Frenkel and Company, LLC represented to Suncoast that it had procured said insurance for the Billy G and its barge/cargo for Suncoast;

WHEREAS, Suncoast was informed by Frenkel and Company, LLC that the tug Billy G was insured by Travelers Insurance Company, policy number ZOH-15N11069-13-ND effective dates from 2-6-13 through 2-6-14 (the "policy"), placed by Frenkel and Company, LLC for this purpose;

WHEREAS, after institution of the Seaman's Lawsuit, Travelers filed an action for declaratory judgment in federal court (the "Dec Action") alleging that the policy was void because Suncoast, through its insurance agent, Frenkel and Company, LLC, had failed to report that the Billy G was leased rather than owned;

WHEREAS, Travelers obtained summary judgment against Suncoast, voiding the policy, on May 18, 2015.

WHEREAS, Suncoast had properly informed Frenkel and Company, LLC of the ownership status of the Billy G at the time of the insurance application, but Frenkel and Company, LLC failed to notify Travelers of same; failed to check the vessel identification number for the Billy G; and/or failed to properly procure the insurance coverage that would have provided a defense and indemnity to Suncoast in the Seaman's Lawsuit.

WHEREAS, Frenkel and Company, LLC's failure to obtain the coverage requested by Suncoast resulted in Suncoast paying $59,000 in insurance premiums for a policy that provided no coverage and left Suncoast exposed to a costly jury trial and a potentially devastating adverse judgment in the Seaman's Lawsuit and further failed to procure coverage on the barge/cargo; and

WHEREAS, Plaintiff and Suncoast, after engaging in mediation, reached an arm's length settlement of the Seaman's Lawsuit in which Suncoast admits that the fair market value of the damages to the Plaintiffs at issue in that lawsuit is $3,000,000 (as described below); Suncoast further admits the allegations of the Seaman's Lawsuit that these damages arose from its actions

in sending the Billy G to sea with insufficient fuel and its subsequent failures to provide maintenance, cure, and medical treatment; and Suncoast admits fault for these damages.

NOW THEREFORE, the parties have entered into arm's-length negotiations designed to bring a conclusion to the Seaman's Lawsuit in order to avoid protracted litigation, save expense, and to prevent, on the part of Suncoast, the imposition of a substantial uninsured liability and hereby agree to the following:

1.    SETTLEMENT OF CLAIMS:  In consideration of the promises set forth herein, Suncoast hereby stipulates and consents to the entry of judgment in favor of Plaintiffs in the amount of $3,000,000 (hereinafter the "Consent Judgment") in the form attached as Exhibit A. This Consent Judgment shall neither be recorded in the public records, nor subject to execution, except as provided below.  The $3,000,000 is apportioned between the Plaintiffs as follows:

   a. Victor Lacayo 40%  - $1,200,000
   b. Julio Bringuez, 20% - $600,000
   c. Feliz Terrero, 10% - $300,000
   d. Eddie Bodden 10% - $300,000
   e. Marcelino Susana  10% -$300,000
   f. Francisco Ortega 10% - $300,000

2.    CAUSE OF ACTION FOR PLAINTIFFS' BENEFIT:  Defendant Suncoast hereby irrevocably assigns to Plaintiffs any and all claims or rights of action related to the Seaman's Lawsuit, including claims and rights of action for failure to procure insurance coverage, breach of contract, breach of fiduciary duty, errors and omissions, negligence, unfair claims practices, bad faith, attorneys' fees, interest and court costs, they now have or may have against Frenkel and Company, LLC and or its employees or agents (whether actual or apparent), and all rights and claims against any other insurance carriers, insurance brokers, or insurance agents that may have provided Suncoast with coverage for the claims asserted by Plaintiffs in the Seaman's lawsuit.

3 of 9

3.    <u>CONSENT FINAL JUDGMENT</u>.  The Consent Final Judgment to be submitted to the Court for entry shall be in substantially the following form:

Pursuant to the Consent Settlement Agreement entered into between the Plaintiffs and Defendant Suncoast Shipping LLC dated February ___, 2016, which is attached hereto and made part hereof,

IT IS HEREBY ADJUDGED that Plaintiffs shall recover from Defendant Suncoast Shipping LLC the sum of $3,000,000 that shall bear interest at a rate of 4.75% per annum.  The $3,000,000 judgment is apportioned between the Plaintiffs as follows:

    a.  Victor Lacayo 40%  - $1,200,000
    b.  Julio Bringuez, 20% - $600,000
    c.  Feliz Terrero, 10% - $300,000
    d.  Eddie Bodden 10% - $300,000
    e.  Marcelino Susana  10% -$300,000
    f.  Francisco Ortega 10% - $300,000

IT IS FURTHER ADJUDGED that all allegations contained in the Plaintiffs' First Amended Complaint are deemed admitted by Suncoast Shipping LLC and that that this Final Judgment shall also be subject to the admissions, covenants and agreements contained in the Consent Settlement Agreement;

Pursuant to the Consent Settlement Agreement, this Final Judgment shall not be certified against Defendant Suncoast, but shall constitute a lien or encumbrance against any insurer, insurance brokers and/or insurance agents issuing or procuring any insurance policies, the insurance policies, or the proceeds therefrom, which are or should have been applicable to the cause of action asserted by the Plaintiff herein, and for which execution, garnishment, or other legal process against such insurer insurance broker, insurance agent, insurance policies or the proceeds thereof, may issue forthwith.

Plaintiffs are further granted leave of Court to amend their complaint to assert such claims against Suncoast's insurance agents, brokers, insurers, as are contemplated by the Consent Settlement Agreement, including without limitation claims against Frenkel and Company, LLC and its employees or agents to enforce this Judgment.

This Court further retains jurisdiction to enforce the terms of the Consent Settlement Agreement.

This Consent Settlement Agreement is null and void should the Court refuse to enter the Consent Final Judgment in the form above.

4.    COVENANT NOT TO ENFORCE VS. SUNCOAST: As to the Consent Judgment, Plaintiffs hereby agree and covenant not to certify, record, execute, docket or file with any sheriff's office, levy, seek garnishment, or other legal process against SUNCOAST or any of its Officers, Directors or employees but will only look to Frenkel and Company, LLC and/or its employees or agents, whether real or apparent, and any other insurance carriers, insurance brokers, or insurance agents that may have provided Suncoast with coverage for the claims asserted by Plaintiffs in Case No. 13-38537 CA 31 for the recovery of said judgment. Notwithstanding any of the promises in this Agreement, the parties recognize that the Clerk of Court, as a ministerial act, will record the Consent Final Judgment; and

5.    Plaintiffs will not enforce the Consent Judgment as a lien or encumbrance against Suncoast's holdings, assets, or real or personal property; nor against any of its Officers, Directors or Employees, and

6.    The parties agree that the Agreement not to Execute and the Assignment are dependent promises given contemporaneously; the Parties understand and agree that the covenant not to enforce is designed ensure that Defendant Suncoast's legal or technical liability for the Consent Judgment entered against them pursuant to this Agreement is not extinguished.

7.    SATISFACTION OF JUDGMENT: Upon final resolution of any action by Plaintiff / Plaintiffs against Frenkel and Company, LLC and/or its employees or agents, whether real or apparent, and any other insurance carriers, insurance brokers, or insurance agents that may have provided Suncoast with coverage for the claims asserted by Plaintiffs in the Seaman's lawsuit, Case No. 13-38537 CA 31, whether said resolution is by payment, settlement, dismissal with prejudice, judgment or otherwise, Plaintiff Plaintiffs agrees to execute a full and complete Satisfaction of Judgment in favor of Defendant Suncoast .

8.    The Final Judgment shall be subject to the covenants and terms of this Agreement.

9.    The Court shall retain jurisdiction to enforce the terms of this Agreement.

10.   It is the desire of the parties to this Agreement that any Court which may be called upon to construe this Agreement will give effect to the intention of the parties hereto.

11.   <u>CONDITIONS:</u>

A.    The parties agree to take such action and to execute and deliver all documents, instruments, or writings as are necessary to effectuate and fully perform all conditions or requirements of this Agreement; and

B.    Suncoast will cooperate fully with Plaintiffs and their counsel in the pursuit of the action against Frenkel and Company, LLC, including but not limited to: (1) providing any necessary documentation upon request, if it has possession or control of the requested documentation; (2) attending depositions and/or any necessary conferences or meetings; (3) executing documents; and (4) otherwise providing information which may be called for incident to the prosecution of the action against Frenkel and Company, LLC.  Any costs incurred by Suncoast in prosecuting the lawsuit that are not awarded by the Court or paid by the Defendants shall be reimbursed by Plaintiffs from any settlement or final judgment.

12.   <u>NO RELEASE OF INSURANCE AGENT'S LIABILITY</u>: The parties have reviewed the Florida Supreme Court cases of *Rosen v. FIGA* and *Wachovia Ins. Services, Inc. v. Toomey* and each agree that it is not their intention to release or discharge Frenkel and Company, LLC or any insurance carrier from liability to the Plaintiffs or Suncoast; nor is it their intention to release or discharge Frenkel and Company, LLC from its liability or obligation to satisfy the Judgment amount.  The intention of the parties is simply to fix the amount of Plaintiffs' damages in a reasonable manner that avoids prolonged and expensive litigation, as well as the uncertainty of a jury's decision, and to allow Plaintiffs to pursue Frenkel and Company, LLC (and any other liable person or entity) for Suncoast's benefit as well as its own.

13.    RECOVERY OF SUNCOAST'S ATTORNEYS' FEES AND PREMIUMS: In their lawsuit against Frenkel and Company, LLC, Plaintiffs agree to include a claim for the $59,000 in premiums that Suncoast paid for the Traveler's policy that was voided in the Dec Action, as well the $25,000 in attorney's fees Suncoast incurred in defending the Dec Action. Should Plaintiffs not recover these sums directly or should they resolve their lawsuit against Frenkel and Company, LLC for less than $3,084,000, Suncoast shall be entitled to a pro rata share of its $25,000 attorney's fees and $59,000 in premiums.

14.    AGREEMENT MADE PRIOR TO DISCHARGE OF LIABILITY: This Agreement is given prior to the discharge of any liability for payment under this Settlement Agreement.   This Agreement is further given in consideration of Plaintiffs' subsequent agreement to forego further proceedings in the Seaman's Lawsuit and any execution of judgment against Suncoast, provided that Suncoast cooperates as specified herein.

15.    COUNTERPARTS TREATED AS ORIGINALS.  This document may be signed in one or more counterparts, all of which counterparts shall be deemed to be one instrument upon execution of a counterpart by all signatories to this Agreement, with each signed counterpart or copy thereof to be treated as an original.

16.    ADVICE OF COUNSEL.  All parties agree they have had access to the advice of counsel in determining whether to enter into this Agreement and further stipulate that they do so with full knowledge of its content and effect and of their own free will.  This Agreement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Agreement is in the best interests of the Parties. Each Party represents and warrants that the person executing this Agreement on his, her, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and shall survive execution of this Agreement.

03/04/2016  15:36     772-340-3050              THE UPS STORE                    PAGE  01

17.  NEUTRAL INTERPRETATION.  In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

18.  JURISDICTION AND VENUE.  The Parties agree that any disputes over the enforcement, terms, requirements or interpretation of this agreement shall be heard by the Circuit Court for the 11ᵃ Judicial Circuit in and for Miami-Dade County, Florida.

I HAVE READ, UNDERSTAND, AND AGREE TO THE FOREGOING.

SUNCOAST SHIPPING, LLC

By: _____

Printed Name: SEAN DOUZIER

individually and as President of Suncoast

Date: 03/04/2016

STATE OF FLORIDA          )
                          ) SS.
COUNTY OF St. Lucie)

SWORN TO AND SUBSCRIBED before me this 4th day of March, 2015, 2016 by Sean Rouzier, who DID/DID NOT take an oath, proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and who:

◻ __ Is personally known to me; or
◻ ✓ Produced as identification: Florida Drivers License

WITNESS my hand and official seal.

My Commission Expires: 09·30·2019    _____
                                     Notary Public



Notary Public State of Florida
Monica Chambers
My Commission FF 010373
Expires 09/30/2019

8 of 9

Executed and agreed to by: PLAINTIFFS

By: _DBodden_

Date: _18 NOVEMBER 2015_

I, Eddie Bodden, the undersigned client, have asked The Vucci Law Group, P.A. to represent me in connection with personal injuries that I sustained as a result of the voyage of the Tug Billy G in June of 2013 which landed in Moa, Cuba. I have reviewed the following Settlement Agreement and I agree with its' contents therein.

8 of 9

Executed and agreed to by: PLAINTIFFS

By: _Felis Terrero_

Date: _6 - 2013_

    I, Feliz Terrero, the undersigned client, have asked The Vucci Law Group, P.A. to represent me in connection with personal injuries that I sustained as a result of the voyage of the Tug Billy G in June of 2013 which landed in Moa, Cuba. I have reviewed the following Settlement Agreement and I agree with its' contents therein.

829-915-9355

Executed and agreed to by: PLAINTIFFS

By: _FnANCisco oҐTeGA_

Date: _6-2013_

I, Francisco Ortega, the undersigned client, have asked The Vucci Law Group, P.A. to represent me in connection with personal injuries that I sustained as a result of the voyage of the Tug Billy G in June of 2013 which landed in Moa, Cuba. I have reviewed the following Settlement Agreement and I agree with its' contents therein.

1-284-343-7218

TonTo LA

8 of 9

Executed and agreed to by: PLAINTIFFS

By: _MARCeLiNO SUSAÑA PerALTA_

Date: _6 – 20 / 3_

    I, Marcelino Susana, the undersigned client, have asked The Vucci Law Group, P.A. to represent me in connection with personal injuries that I sustained as a result of the voyage of the Tug Billy G in June of 2013 which landed in Moa, Cuba. I have reviewed the following Settlement Agreement and I agree with its' contents therein.

98 – 63/,6037

Executed and agreed to by: PLAINTIFFS

By: _Victor Celso Lacayo Lopez_

Date: _11-18-15_

    I, Victor Lacayo Lopez, the undersigned client, have asked The Vucci Law Group, P.A. to represent me in connection with personal injuries that I sustained as a result of the voyage of the Tug Billy G in June of 2013 which landed in Moa, Cuba. I have reviewed the following Settlement Agreement and I agree with its' contents therein.

Executed and agreed to by: PLAINTIFFS

By: _Julio Enmanuel Bringuez Obregon_

Date: _Friday 18 November 2015_

    I, Julio Bringuez, the undersigned client, have asked The Vucci Law Group, P.A. to represent me in connection with personal injuries that I sustained as a result of the voyage of the Tug Billy G in June of 2013 which landed in Moa, Cuba. I have reviewed the following Settlement Agreement and I agree with its' contents therein.

## POLICY COVER SHEET

Job Name:  XP3312I
File Number:  06170

Print Date and Time:  06/09/13  18:43

Business Center /
Original Business Unit:          OCEAN MARINE

Policy Number:                   ZOH-15N11069-13-ND

Name of Insured:                 SUNCOAST SHIPPING, LLC

Agency Number:                   3119502

Department or Expense Center:

Underwriter:                            0      Underwriting Team:

Data Entry Person:               STORY,JUDITH

Date and Time:                   06/09/13  00:00  001

**Special Instructions**


Policy Commencement Date: 02/06/13

THIS POLICY CONTAINS FORMS SELECTED THROUGH DOCUMENT SELECT

THE FOLLOWING SELECTED FORMS ARE NOT APPROVED ON THE FORMS STATUS TABLE

| | FORM NBR | EDITION | CO | STATE | TRANS DATE |
|---|---|---|---|---|---|
| * | DO101 | 01.08 | 98 | FL | 2013-02-06* |
| * | ND044 | 01.08 | 98 | FL | 2013-02-06* |
| * | OMGE0001 | 01.12 | 98 | FL | 2013-02-06* |
| * | OMGE0003 | 10.12 | 98 | FL | 2013-02-06* |
| * | OMGE0100 | 01.12 | 98 | FL | 2013-02-06* |
| * | OMGE0101 | 03.03 | 98 | FL | 2013-02-06* |
| * | OMGE0103 | 07.05 | 98 | FL | 2013-02-06* |
| * | OMGE0108 | 10.06 | 98 | FL | 2013-02-06* |
| * | OMOH0001 | 06.77 | 98 | FL | 2013-02-06* |
| * | OMOH0004 | 08.76 | 98 | FL | 2013-02-06* |
| * | OMOH0105 | 09.59 | 98 | FL | 2013-02-06* |
| * | OMOH0122 | 07.08 | 98 | FL | 2013-02-06* |
| * | OMOH0123 | 07.05 | 98 | FL | 2013-02-06* |
| * | OMOH0139 | 02.76 | 98 | FL | 2013-02-06* |
| * | OMPI0001 | 01.56 | 98 | FL | 2013-02-06* |
| * | OMPI0101 | 07.76 | 98 | FL | 2013-02-06* |
| * | OMPI0111 | 07.08 | 98 | FL | 2013-02-06* |
| * | OMPI0113 | 02.11 | 98 | FL | 2013-02-06* |

POLBR  11-85

PCLBR  11-85

SUNCOAST 000027

DISCLOSURE NOTICE
TERRORISM RISK INSURANCE ACT OF 2002
REJECTION OF OUR OFFER OF COVERAGE

You did not accept our offer of coverage for certified acts of terrorism, as defined in and certified under the Terrorism Risk Insurance Act of 2002.   Therefore, this policy contains one or more exclusions that apply to certified acts of terrorism.   Under the federal Terrorism Risk Insurance Program Reauthorization Act of 2007, the applicable definition of certified acts of terrorism no longer requires that the act of terrorism be committed on behalf of a foreign person or foreign interest.   Therefore, each such exclusion is not limited to an act of terrorism committed on behalf of a foreign person or interest.

If you were not made aware of our offer of coverage for certified acts of terrorism, or believe that this notice was included in this policy in error, please notify your agent or broker immediately.

Name of Insured: SUNCOAST SHIPPING, LLC

Policy Number: ZOH-15N11069-13-ND

Effective Date: 02/06/13

Processing Date: 06/09/13   00:00   001

D0101 Rev. 1-08

Page 1 of 1

SUNCOAST 000028

SUNCOAST 000029

# IMPORTANT NOTICE – INDEPENDENT AGENT AND BROKER COMPENSATION

NO COVERAGE IS PROVIDED BY THIS NOTICE.  THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY.  YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS.  IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, call our toll-free telephone number, 1-866-904-8348, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

SUNCOAST 000031



# OCEAN MARINE CLAIM

## COVERING THE WATERS OF THE WORLD

At Travelers, we know that professional claim handling means knowing that you'll get answers, not hassles. It means knowing that your clients will be treated fairly, and that their claims will receive prompt attention and unmatched professional service. It means knowing that you'll be working with an experienced staff who understand your client's business and will do what they promise - whether it's returning a phone call or e-mail, making a personal visit or sending a check. Most importantly, it's knowing that what matters to you is what matters to us.

Our dedicated Ocean Marine Claim Unit, under the leadership of Terence Harris, features professionals located where you need them - in the field. Working in tandem with our claim handlers, our recovery specialists help maximize your recovery potential while keeping your expenses to a minimum.

For the most efficient claim service, please call, fax or e-mail your claims directly to the regional or specialty manager for the state where you are located.

| Region / Specialty | States | Manager |
|---|---|---|
| West | AZ, CA, CO, HI, NM, NV, UT | **Megan Williams**<br>Phone:  206.464.5782<br>Fax:        877.305.6553<br>E-mail:  mmwilli1@travelers.com |
| Northwest | AK, ID, MT, OR, WA, WY | **Megan Williams**<br>Phone:  206.464.5782<br>Fax:        877.305.6553<br>E-mail:  mmwilli1@travelers.com |
| Midwest | IA, IL (northern), IN, KY, MI, MN, ND, NE, OH, SD, WI | **Wyndell Hunt**<br>Phone:  281.606.7251<br>Fax:        281.606.8516<br>E-mail:  wdhunt@travelers.com |
| Northeast | CT, MA, ME, NH, NY, RI, VT | **Theresa Gilbert**<br>Phone:  917.778.6411<br>Fax:        917.778.7009<br>E-mail:  tgilbert@travelers.com |
| Mid-Atlantic and Southeast | AL, DC, DE, FL, GA, MD, NC, NJ, PA, SC, TN, VA, WV | **Mark Smieya**<br>Phone:  732.205.9275<br>Fax:        888.479.0550<br>E-mail:  msmieya@travelers.com |
| South Central | AR, IL (southern), KS, LA, MO, MS, OK, TX | **Wyndell Hunt**<br>Phone:  281.606.7251<br>Fax:        281.606.8516<br>E-mail:  wdhunt@travelers.com |
| Recovery | Countrywide | **Mark Smieya**<br>Phone: 732.205.9275<br>Fax: 888.479.0550<br>E-mail:<br>msmieya@travelers.com |
| Yachts | Countrywide | **Joe Grenzebach**<br>Phone:  206.464.5739<br>Fax:        206.464.3432<br>E-mail:  jgrenzeb@travelers.com |

385 Washington  Street,  St. Paul MN  55102,    www.travelers.com
OMGE0003   Rev. 10-12
© 2012   The Travelers   Indemnity   Company. All  rights  reserved.

SUNCOAST 000033



**TRAVELERS**⌐

Policy Number
ZOH-15N11069-13-ND

Former Policy Number
NEW

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

A CAPITAL STOCK COMPANY HEREIN CALLED THE COMPANY

# DECLARATIONS

**NAME AND ADDRESS OF INSURED**

SUNCOAST SHIPPING, LLC
1909 SW SOUTH MACEDO BLVD
PORT ST LUCIE   FL 34984

**NAME AND ADDRESS OF AGENCY**

FRENKEL & COMPANY, LLC
101 HUDSON STREET
JERSEY CITY NJ 07302

**BUSINESS DESCRIPTION:**

[ ] INDIVIDUAL   [ ] PARTNERSHIP   [X] LIMITED LIABILITY COMPANY   [ ] CORPORATION   [ ] OTHER

| From: FEBRURY 6, 2013 | To: FEBRUARY 6, 2014 | 12:01 A.M. Standard Time at your mailing address |
|---|---|---|
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. | | |

| COVERAGE | PREMIUM |
|---|---|
| HULL AND MACHINERY | $47,500.00 |
| PROTECTION & INDEMNITY | $21,500.00 |
| | |
| **TOTAL PREMIUM** | $69,000.00 |

| SURCHARGE AND/OR SURTAX | AMOUNT |
|---|---|
| FLORIDA CAT FUND | $   897.00 |

PAY PLAN: [X] Annual   [ ] 2 Pay   [ ] 4 Pay   [ ] 10 Pay   [ ] OTHER

THE ⌐POLICY FORMS LIST⌐ SHOWS ALL THE FORMS INCLUDED WHEN THIS POLICY BEGINS.

LOSS, IF ANY, PAYABLE TO

ASSURED OR ORDER

IN WITNESS WHEREOF, the Company designated on the Declarations page has caused this Policy to be signed by its President and Secretary and countersigned on the Declarations page by a duly authorized representative of the Company.

*Wendy C. Sky*
Secretary

*Brian Mac Lean*
President

| FEBRUARY 6, 2013 | NEW YORK, NY | |
|---|---|---|
| Countersigned Date | Countersigned At | Authorized Representative |

© 2012 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000035

 **TRAVELERS**

POLICY NUMBER: ZOH-15N11069-13-ND
EFFECTIVE DATE: 02/06/13
ISSUE DATE: 06/09/13

# LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

This listing shows the number of forms, schedules and endorsements by line of business.

| | |
|---|---|
| DO 10 1  01 08 | DISCLOSURE NOTICE TERRORISM RISK INSURANCE ACT OF 2002 REJECTION OF OUR OFFER OF COVERAGE |
| OM GE 00 01 01 12 | DECLARATIONS |
| IL T8 01 10 93 | FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS |
| OM GE 01 00 01 12 | AIMU CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE |
| OM GE 01 01 03 03 | AIMU - EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (3/1/03) |
| OM GE 01 03 07 05 | CANCELLATION CLAUSE |

OCEAN MARINE

| | |
|---|---|
| OM GE 01 08 10 06 | AIMU U.S.ECONOMIC AND TRADE SANCTIONS CLAUSE |
| OM OH 00 01 06 77 | AMERICAN INSTITUTE HULL CLAUSES (7) (6/2/77) |
| OM OH 00 04 08 76 | AMERICAN INSTITUTE TUG FORM (53R-1) |
| OM OH 01 05 09 59 | AMERICAN INSTITUTE S. R. & C. C. ENDORSEMENT (HULLS) (87B-46) (9/8/59) |
| OM OH 01 22 07 08 | SCHEDULE OF VESSELS |
| OM OH 01 23 07 05 | SERVICE OF SUIT CLAUSE |
| OM OH 01 39 02 76 | AMERICAN INSTITUTE DELIBERATE DAMAGE - POLLUTION HAZARD (HULL) (6Z-4) |
| OM PI 00 01 01 56 | PROTECTION AND INDEMNITY (SP-23) |
| OM PI 01 01 07 76 | AMERICAN INSTITUTE POLLUTION EXCLUSION CLAUSE (P&I) AND BUY BACK ENDORSEMENT A (25) (7/4/76) |
| OM PI 01 11 07 08 | CREW WARRANTY |
| OM PI 01 13 02 11 | PROTECTION & INDEMNITY & HULL COLLISION, AND/OR HULL COLLISION & TOWERS, COMBINED SINGLE LIMIT COVERAGE ENDORSEMENT |

IL  T8  01 10 93
SUNCOAST 000037

AIMU
CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND
ELECTROMAGNETIC EXCLUSION CLAUSE

(March 1, 2003)

---

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13  00:00  001 |

OMGE0100 Rev. 1-12
© 2012 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

SUNCOAST 000038

SUNCOAST 000039

AIMU
EXTENDED RADIOACTIVE CONTAMINATION  EXCLUSION CLAUSE
WITH  U.S.A. ENDORSEMENT

(March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.      In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from

  1.1      ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

  1.2      the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

  1.3      any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

  1.4      the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

RADIOACTIVE CONTAMINATION  EXCLUSION CLAUSE
(U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

  if fire is an insured peril

  and

  where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

  and

  a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective  Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13   00:00   001 |

OMGE0101 Ed. 3-03
© 2003 The Travelers Indemnity Company. All rights reserved.                                    Page 1 of 1

SUNCOAST 000040

SUNCOAST 000041

**CANCELLATION CLAUSE**

This Policy may be canceled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective.  This Policy may be canceled by the Company by mailing to the Assured at the address shown in this Policy written notice stating when not less than **thirty**                (30 ) days thereafter such cancellation may be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice, and the effective date of cancellation stated in the notice shall become the end of the Policy period.  Delivery of such written notice either by the Assured or by the Company shall be equivalent to mailing.

In event of non-payment of premium **thirty**                (30 ) days after attachment, or of any additional premium when due, this Policy may be canceled by the Underwriter upon **ten**                (10 ) days written notice sent to the Assured at his last known address or in care of the Broker who negotiated this Policy.  Such proportion of the premium, however, as shall have been earned up to the time of the cancellation shall be payable.  In the event of Total Loss of Vessel occurring prior to a cancellation or termination of this Policy full annual premium shall be considered earned.

If the Assured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure.  If the Company cancels earned premium shall be computed pro-rata.  Premium adjustment may be made at the time of cancellation is effected, and if not then made, shall be made as soon as possible after cancellation becomes effective.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective  Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing  Date 06/09/13  00:00  001 |

OMGE0103 Ed. 7-05

© 2005 The Travelers Indemnity Company. All rights reserved.                Page 1 of 1

SUNCOAST 000042

SUNCOAST 000043

**AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13  00:00  001 |

OMGE0108 Ed. 10-06
© 2006 The Travelers Indemnity Company. All rights reserved.          Page 1 of 1

SUNCOAST 000044

SUNCOAST 000045

**American Institute Hull Clauses**                                                                                    7
     **(June 2, 1977)**

To be attached to and form a part of Policy No. ZOH-15N11069-13-ND
of the TRAVELERS PROPERTY CASUALTY CO. OF AMERICA

  The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

**ASSURED**
  This Policy insures SUNCOAST SHIPPING, LLC                                                                        1
                                                                                                                    2
                                                                            hereinafter referred to as the Assured. 3
  If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent  4
than would the Owner, had claim been made by the Owner as an Assured named in this Policy.                           5
  Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall  6
not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid com-  7
panies, or with respect to any loss, damage or expense against which such companies are insured.                     8

**LOSS PAYEE**
  Loss, if any, payable to ASSURED                                                                                   9
                                                                                                                    10
                                                                                                         or order.  11
  Provided, however, Underwriters shall pay claims to others as set forth in the Collision Liability clause and may make direct payment to persons  12
providing security for the release of the Vessel in Salvage cases.                                                  13

**VESSEL**
  The Subject Matter of this insurance is the Vessel called the PER SCDHEDULE OF VESSELS                            14
or by whatsoever name or names the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull,  15
launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insu-  16
lation, motor generators and other electrical machinery.                                                           17
  In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed respon-  18
sibility therefore, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.  19
  Notwithstanding the foregoing, cargo containers, barges and lighters shall not be considered a part of the Subject Matter of this insurance.  20

**DURATION OF RISK**
From the 6TH            day of FEBRUARY 2013. 12:01 A.M. Local Standard Time                                        21
to the 6TH             day of FEBRUARY 2014. 12:01 A.M. Local Standard Time.                                       22
  Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be  23
given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.               24
  In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.  25

**AGREED VALUE**
  The vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at  26
PER SCDHEDULE OF VESSELS                                             Dollars.                                        27

**AMOUNT INSURED HEREUNDER**
PER SCDHEDULE OF VESSELS                                             Dollars.                                        28

**DEDUCTIBLE**
  Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue  29
and Labor clause and claims under the Collision Liability clause) arising out of each separate accident, the sum of PER SCHEDULE unless the  30
accident results in a Total Loss of the Vessel in which case this clause shall not apply. A recovery from other interests, however, shall not operate to  31
exclude claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that  32
sum. For the purpose of this clause each accident shall be treated separately, but is agreed that (a) a sequence of damages arising from the same acci-  33
dent shall be treated as due to that accident and (b) all heavy weather damage, or damage caused by contact with floating ice, which occurs during a  34
single sea passage between two successive ports shall be treated as though due to one accident.                     35

---

**Name of Insured**          **Policy Number** ZOH-15N11069-13-ND          **Effective Date** 02/06/13
SUNCOAST SHIPPING, LLC                                          **Processing Date** 06/09/13  00:00  001

OMOH0001 Ed. 6-2-77
© 1977 The Travelers Indemnity Company. All rights reserved.                        Page 1 of 6

                                                                          SUNCOAST 000046

**PREMIUM**

The Underwriters  to be paid in consideration  of this insurance  PER SCOHEDULE OF VESSELS                                                36
                      Dollars being at the annual rate of AGREED percent,  which premium  shall be due on attachment.   If the Vessel   37
is insured under this Policy for period of less than one year at pro rata of the annual rate, full annual premium shall be considered earned and immedi-   38
ately  due and payable  in the event of Total Loss of the Vessel.                                                                                39

**RETURNS  OF PREMIUM**

Premium returnable  as follows:                                                                                                                 40
   Pro rata daily net in the event of termination  under the Change  of Ownership clause;                                                        41
   Pro rata monthly net for each uncommenced  month if it be mutually agreed to cancel this Policy;                                               42
   For each period of 30 consecutive  days the Vessel may be laid up in port for account  of the Assured,                                        43
   NOT APPLICABLE                                         cents per cent. net not under repair, or                                               44
   NOT APPLICABLE                                         cents per cent. net under repair;                                                      45
provided  always that:                                                                                                                          46
   (a)  a Total Loss of the Vessel has not occurred  during the currency  of this Policy;                                                        47
   (b)  in no case shall a return for lay-up be allowed when the Vessel is lying in  exposed or unprotected waters or in any location not approved by   48
        the Underwriters;                                                                                                                        49
   (c)  in the event of any amendment  of the annual rate, the above rates of return  shall be adjusted  accordingly;                            50
   (d)  in no case shall a return be allowed when the Vessel is used as a storage ship or for lightering  purposes.                              51
   If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such pro-   52
portion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to 30. Should the lay-up period exceed 30   53
consecutive  days, the Assured  shall have the option to elect the period of 30 consecutive  days for which a return  is recoverable.            54

**NON-PAYMENT   OF PREMIUM**

In event of non-payment of premium 30 days after attachment, or of any additional premium when due, this Policy may be cancelled by the Under-   55
writers upon 10 days written or telegraphic notice sent to the Assured at his last known address or in care of the broker who negotiated this Policy.   56
Such proportion of the premium, however, as shall have been earned up to the time of cancellation shall be payable.  In the event of Total Loss of   57
the Vessel occurring  prior to any cancellation  or termination  of this Policy full annual  premium  shall be considered  earned.              58

**ADVENTURE**

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or   59
at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, services and trades; with leave   60
to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but the Vessel may not be towed, except   61
as is customary or when in need of assistance, nor shall the Vessel render assistance or undertake towage or salvage services under contract previously   62
arranged by the Assured, the Owners, the Managers or the Charterers of the Vessel, nor shall the Vessel, in the course of trading operations, engage in   63
loading or discharging cargo at sea, from or into another vessel other than a barge, lighter or similar craft used principally in harbors or inland waters.   64
The phrase "engage in loading or discharging cargo at sea" shall include while approaching, leaving or alongside, or while another vessel is approaching,   65
leaving  or alongside the Vessel.                                                                                                               66
   The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage or salvage activities, or date of sailing, or loading   67
or discharging cargo at sea, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b)   68
any amended  terms of cover and any additional  premium  required  by the Underwriters  are agreed to by the Assured.                           69

**PERILS**

Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, Fire   70
Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-mart, Surprisals, Takings at Sea, Arrests, Re-   71
straints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all   72
other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, how-   73
ever, such of the foregoing  perils as may be excluded  by provisions  elsewhere  in the Policy or by endorsement  thereon.                     74

**ADDITIONAL  PERILS (INCHMAREE)**

Subject to the conditions  of this Policy, this insurance  also covers loss of or damage to the Vessel directly caused by the following:         75
   Accidents  in loading, discharging  or handling  cargo, or in bunkering;                                                                      76
   Accidents  in going on or off, or while on drydocks,  graving docks, ways, gridirons  or pontoons;                                             77
   Explosions  on shipboard  or elsewhere;                                                                                                       78
   Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any   79
      latent defect in the machinery  or hull, (excluding  the cost and expense  of replacing  or repairing  the defective  part);               80
   Breakdown  of or accidents  to nuclear  installations  or reactors  not on board the insured  Vessel;                                         81
   Contact  with aircraft, rockets  or similar missiles,  or with any land conveyance;                                                           82
   Negligence  of Charterers  and/or Repairers,  provided  such Charterers  and/or Repairers  are not an Assured  hereunder;                     83
   Negligence  of Masters, Officers,  Crew or Pilots;                                                                                            84
provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them.   85

© 1977 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000047

Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.    86

## DELIBERATE DAMAGE (POLLUTION HAZARD)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities    87
acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof resulting directly from damage to the Vessel for which the    88
Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the    89
Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat. Masters, Officers, Crew or Pilots are not to be considered    90
Owners within the meaning of this clause should they hold shares in the Vessel.    91

## CLAIMS (GENERAL PROVISIONS)

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Under-    92
writers, and:    93

    (a)  where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire;    94
    (b)  the Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured for the    95
        actual additional expense of the voyage arising from compliance with the Underwriters' requirement);    96
    (c)  the Underwriters shall have the right of veto in connection with any repair firm proposed;    97
    (d)  the Underwriter may take tenders, or may require in writing that tenders be taken for the repair of the Vessel, in which event, upon acceptance    98
        of a tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent. per annum on the amount insured, for    99
        each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent    100
        that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the    101
        Underwriters' approval.    102

Due credit shall be given against the allowances in (b) and (d) above for any amount recovered:    103
    (1)  in respect of fuel, stores, and wages and maintenance of the Master, Officers or Crew allowed in General or Particular Average;    104
    (2)  from third parties in respect of damages for detention and/or loss of profit and/or running expenses;    105
for the period covered by the allowances or any part thereof.    106

No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers or Crew, except when incurred solely for the    107
necessary removal of the Vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and mainte-    108
nance will be allowed only while the Vessel is under way. This exclusion shall not apply to overtime or similar extraordinary payments to the Master,    109
Officers or Crew incurred in shifting the Vessel for tank cleaning or repairs or while specifically engaged in these activities, either in port or at sea.    110

General and Particular Average shall be payable without deduction, new for old.    111

The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found.    112

No claim shall in any case be allowed in respect of scraping or painting the Vessel's bottom.    113

In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for the use on board the Vessel and for which the    114
Assured has assumed responsibility, claim shall not exceed (1) the amount the Underwriters would pay if the Assured were owner of such equipment or    115
apparatus, or (2) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less.    116

No claim for unrepaired damages shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period    117
of the Policy and left unrepaired at the expiration of the Policy shall be demonstrated by the Assured to have diminished the actual market value of the    118
Vessel on that date if undamaged by such perils.    119

## GENERAL AVERAGE AND SALVAGE

General Average and Salvage shall be payable as provided in the contract of affreightment, or failing such provision or there be no contract of    120
affreightment, payable at the Assured's election either in accordance with York-Antwerp Rules 1950 or 1974 or with the Laws and Usages of the Port of    121
New York. Provided always that when an adjustment according to the laws and usages of the port of destination is properly demanded by the owners    122
of the cargo, General Average shall be paid accordingly.    123

In the event of salvage, towage or other assistance being rendered to the Vessel by any vessel belonging in part or in whole to the same Owners or    124
Charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the man-    125
ner provided for under the Collision Liability clause in this Policy, and the amount so awarded so far as applicable to the interest hereby insured shall    126
constitute a charge under this Policy.    127

When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribution    128
(except in respect to amounts made good to the Vessel) or Salvage, shall not exceed that proportion of the total contribution due from the Vessel which    129
the amount insured hereunder bears to the contributory value, and if, because of damage for which the Underwriters are liable as Particular Average, the    130
value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this Policy shall    131
first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount bears    132
to the contributory value.    133

## TOTAL LOSS

In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of the    134
damaged or break-up value of the Vessel or wreck shall be taken into account.    135

There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the    136
Agreed Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising    137

---

OMOH0001 Ed. 6-2-77
© 1977 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000048

from the same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be 138
claimed separately under the Sue and Labor clause. 139

In the event of Total Loss (actual or constructive), no claim to be made by the Underwriters for freight, whether notice of abandonment has been 140
given or not. 141

In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this 142
Policy. 143

## SUE AND LABOR

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel 144
for, in, and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof 145
the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured 146
in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment. 147

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured 148
hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual 149
value of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate 150
part of the Agreed Value. 151

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized 152
or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction 153
for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided 154
always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to 155
expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having 156
been incurred in respect of the Vessel. 157

## COLLISION LIABILITY

And it is further agreed that: 158

(a) if the Vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault 159
shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the 160
Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective sub- 161
scriptions hereto bear to the Agreed Value, provided always that their liability in respect to any one such collision shall not exceed their propor- 162
tionate part of the Agreed Value; 163

(b) in cases where, with the consent in writing of a majority (in amount) of Hull Underwriters, the liability of the Vessel has been contested, or pro- 164
ceedings have been taken to limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur 165
or be compelled to pay. 166

When both vessels are to blame, then, unless the liability of the owners or Charterers of one or both such vessels becomes limited by law, claims 167
under the Collision Liability clauses shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled 168
to pay the owners or Charterers of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed 169
in ascertaining the balance or sum payable by or to the Assured in consequence of such collision. 170

The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or chart- 171
erers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties 172
can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed 173
by the majority (in amount) of Hull Underwriters interested; the two Arbitrators chosen to choose a third-Arbitrator before entering upon the reference, 174
and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding. 175

Provided always that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in conse- 176
quence of, or with respect to: 177

(a) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law; 178

(b) injury to real or personal property of every description; 179

(c) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever; 180

(d) cargo or other property on or the engagements of the Vessel; 181

(e) loss of life, personal injury or illness. 182

Provided further that exclusions (b) and (c) above shall not apply to injury to other vessels or property thereon except to the extent that such injury 183
arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in (c) above. 184

## PILOT AND TOWAGE

This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners 185
when the Assured or the agent of the Assured accepts such contract in accordance with established local practice. 186

Where in accordance with such practice, pilotage or towage services are provided under contracts requiring the Assured or the agent of the Assured: 187

(a) to assume liability for damage resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel, or 188

(b) to indemnify those providing the pilotage or towage services against loss or liability for any such damages, 189

it is agreed that amounts paid by the Assured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other 190
person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability clause in this Policy 191

OMOH0001 Ed. 6-2-77
Page 4 of 6

© 1977 The Travelers Indemnity Company. All rights reserved.

to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreement. Provided always | 192
that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability clause, including this clause, be greater than | 193
the amount of any statutory limitation of liability to which owners are entitled or would be entitled if liability under any contractual obligation referred to in | 194
this clause were included among the liabilities subject to such statutory limitations. | 195

### CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be | 196
chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or | 197
withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, | 198
management, charter, requisition or classification; provided, however, that: | 199

    (a) if the Vessel has cargo on board and has already sailed from her loading port, or is at sea in ballast, such automatic termination shall, if | 200
        required, be deferred until arrival at final port of discharge if with cargo, or at port of destination if in ballast; | 201

    (b) in the event of an involuntary temporary transfer by requisition or otherwise , without the prior execution of a written agreement by the | 202
        Assured, such automatic termination shall occur fifteen days after such transfer. | 203

This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between | 204
this time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against | 205
the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the | 206
amount insured hereunder bears to the Agreed Value. | 207

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another, | 208
and it shall not apply to any internal changes within the offices of the Assured. | 209

### ADDITIONAL INSURANCE

It is a condition of this Policy that no additional insurance against the risk of Total Loss of the Vessel shall be effected to operate during the cur- | 210
rency of this Policy by or for account of the Assured, Owners, Managers, Operators or Mortgagees except on the interests and up to the amounts enum- | 211
erated in the following Sections (a) to (g), inclusive, and no such insurance shall be subject to P.P.I., F.I.A. or other like term on any interests whatever | 212
excepting those enumerated in Section (a), provided always and notwithstanding the limitation on recovery in the Assured clause a breach of this condition | 213
shall not afford the Underwriters any defense to a claim by a Mortgagee who has accepted this Policy without knowledge of such breach: | 214

    (a) DISBURSEMENTS, MANAGERS' COMMISSIONS, PROFITS OR EXCESS OR INCREASED VALUE OF HULL AND MACHINERY, AND/OR SIMILAR INTER- | 215
        ESTS HOWEVER DESCRIBED, AND FREIGHT (INCLUDING CHARTERED FREIGHT OR ANTICIPATED FREIGHT) INSURED FOR TIME. An amount not exceeding | 216
        in the aggregate 25% of the Agreed Value. | 217

    (b) FREIGHT OR HIRE, UNDER CONTRACTS FOR VOYAGE. An amount not exceeding the gross freight or hire for the current cargo passage and next | 218
        succeeding cargo passage (such insurance to include, if required, a preliminary and an intermediate ballast passage) plus the charges of insur- | 219
        ance. In the case of a voyage charter where payment is made on a time basis, the amount shall be calculated on the estimated duration of the | 220
        voyage, subject to the limitation of two cargo passages as laid down herein. Any amount permitted under this Section shall be reduced, as the | 221
        freight or hire is earned, by the gross amount so earned. Any freight or hire to be earned under the form of Charters described in (d) below shall | 222
        not be permitted under this Section (b) if any part thereof is insured as permitted under said Section (d). | 223

    (c) ANTICIPATED FREIGHT IF THE VESSEL SAILS IN BALLAST AND NOT UNDER CHARTER. An amount not exceeding the anticipated gross freight | 224
        on next cargo passage, such amount to be reasonably estimated on the basis of the current rate of freight at time of insurance, plus the charges of | 225
        insurance. Provided, however, that no insurance shall be permitted by this Section if any insurance is effected as permitted under Section (b) | 226

    (d) TIME CHARTER HIRE OR CHARTER HIRE FOR SERIES OF VOYAGES. An amount not exceeding 50% of the gross hire which is to be earned under | 227
        the charter in a period not exceeding 18 months. Any amount permitted under this Section shall be reduced as the hire is earned under the charter | 228
        by 50% of the gross amount so earned but, where the charter is for a period exceeding 18 months, the amount insured need not be reduced while | 229
        it does not exceed 50% of the gross hire still to be earned under the charter. An insurance permitted by this Section may begin on the signing | 230
        of the charter. | 231

    (e) PREMIUMS. An amount not exceeding the actual premiums of all interests insured for a period not exceeding 12 months (excluding premiums | 232
        insured as permitted under the foregoing Sections but including, if required, the premium or estimated calls on any Protection and Indemnity or | 233
        War Risks and Strikes insurance ) reducing pro rata monthly. | 234

    (f) RETURNS OF PREMIUM. An amount not exceeding the actual returns which are recoverable subject to "and arrival" or equivalent provision under | 235
        any policy of insurance. | 236

    (g) INSURANCE IRRESPECTIVE OF AMOUNT AGAINST: Risks excluded by War, Strikes and Related Exclusions clause; risks enumerated in the American | 237
        Institute War Risks and Strikes Clauses; and General Average and Salvage Disbursements. | 238

### WAR STRIKES AND RELATED EXCLUSIONS

**The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy.** | 239
**This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:** | 240

    **(a) Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or** | 241
    **(b) Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or** | 242
    **(c) Any mine, bomb or torpedo not carried as cargo on board the Vessel; or** | 243
    **(d) Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or** | 244
    **(e) Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or** | 245

© 1977 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000050

    (f)  Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power; or    246

    (g)  Malicious acts or vandalism, unless committed by the Master or Mariners and not excluded elsewhere under this War Strikes and Related   247
        Exclusions clause; or   248

    (h)  Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (h) not to exclude  collision or contact with   249
        aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by   250
        a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned or, in   251
        the case of a collision, any other vessel involved therein, is performing.  As used herein, "power" includes any authority maintaining, naval, mili-   252
        tary or air forces in association with a power.   253

  If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above   254
conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force.   255

© 1977 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000051

**American Institute**
**TUG FORM**
**(August 1, 1976)**

53R-1

To be attached to and form a part of Policy No. ZOH-15N11069-13-ND
of the TRAVELERS PROPERTY CASUALTY CO. OF AMERICA

**The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.**

**ASSURED**

This Policy insures SUNCOAST SHIPPING, LLC

hereafter referred to as the Assured.

If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent than would the Owner, had claim been made by the Owner as an Assured named in this Policy.

Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid companies, or with respect to any loss, damage or expense against which such companies are insured.

**LOSS PAYEE**

Loss, if any, (excepting claims required to be paid to others under the Collision and Tower's Liability Clause), payable to ASSURED

or order.

**VESSEL**

The Subject Matter of this insurance is the Vessel called the PER SCDHEDULE OF VESSELS or by whatsoever name or names, the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation, motor generators and other electrical machinery.

In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed, responsibility therefor, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.

In the event that more than one vessel is insured by the Policy, all of these clauses shall apply as though a separate policy had been issued with respect to each vessel.

**TRADING WARRANTY**

Warranted that the Vessel shall be confined to THE WATERS OF THE BAHAMAS EXTENDED TO INCLUDE THE DELIVERY TRIP TO AND FROM STATEN ISLAND

Any breach of the Trading Warranty specified in this Policy shall result in a suspension thereof, provided, however, that on the return of the Vessel in a seaworthy condition to within the limit stated in the said Trading Warranty this Policy shall re-attach and continue in full force and effect but in no event beyond the normal expiry thereof.

**DURATION OF RISK**

From the 6TH          day of FEBRUARY   2013. 12:01 LS   time.
to the 6TH           day of FEBRUARY   2014. 12:01 LS   time

Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.

In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.

**AGREED VALUE**

The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at PER SCDHEDULE OF VESSELS                                            Dollars.

**AMOUNT INSURED HEREUNDER**

PER SCDHEDULE OF VESSELS                                            Dollars.

**PREMIUM**

The Underwriters to be paid in consideration of this insurance PER SCDHEDULE OF VESSELS
Dollars being at the rate of AGREED          per cent,
which premium shall be due on attachment.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13   00:00   001 |

OMOH0004 Ed. 8-1-76

© 1976 The Travelers Indemnity Company. All rights reserved.

Page 1 of 5

SUNCOAST 000052

**DEDUCTIBLE**

    Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue | 35
and Labor Clause and claims under the Collision and Tower's Liability Clause) arising out of each separate accident, the sum of SPER SCDHEDULE | 36
, unless the accident results in a Total Loss of the Vessel in which case this clause shall not apply to the claim | 37
for the Total Loss of the Vessel and to claims under the Sue and Labor clause. A recovery from other interests, however, shall not operate to exclude | 38
claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that sum. | 39
For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same accident | 40
shall be treated as due to that accident and (b) all heavy weather damage which occurs during a single sea passage between two successive ports | 41
shall be treated as though due to one accident. | 42

**RETURNS OF PREMIUM**

    Premium returnable as follows: | 43
pro rata daily in the event of termination under the Change of Ownership clause; | 44
pro rata daily if this Policy be cancelled by the Underwriters; | 45
short rate will be charged if this Policy be cancelled by the Assured; | 46
NOT APPLICABLE cents per cent., for each period of 30 consecutive days the Vessel may be laid up in port not under repair; | 47
provided always that: | 48
    (a)  from all return premiums the same percentage of deduction (if any) shall be made as was allowed by the Underwriters on receipt of the original | 49
        premium; | 50
    (b)  a Total Loss of the Vessel has not occurred during the currency of this Policy; | 51
    (c)  in no case shall a return for lay-up be allowed when the Vessel is lying exposed or unprotected waters or in any location not approved by | 52
        the Underwriters; | 53
    (d)  in the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly. | 54
    If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such | 55
proportion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to 30. Should the lay-up period exceed | 56
30 consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return is recoverable. | 57

**CANCELLATION**

    This Policy may be cancelled either by the Underwriters or by the Assured giving 15 days' written or telegraphic notice to the other. Underwriters' | 58
notice may be sent to the Assured's last known address or in care of the Broker who negotiated this Policy. In the event of Total Loss of the Vessel | 59
occurring prior to any cancellation or termination of this Policy, full annual premium shall be considered earned. | 60

**ADVENTURE**

    Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, subject to all the terms, conditions | 61
and warranties of this Policy, as employment may offer, in port or at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, | 62
in all places, and on all occasions. | 63

**PERILS**

    Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Waters named herein, | 64
Fire, Lightning, Earthquake, Assailing Thieves, Jettisons, Barratry of the Master and Mariners and all other like Perils that shall come to the Hurt, De- | 65
triment or Damage of the Vessel. | 66

**ADDITIONAL PERILS (INCHMAREE)**

    Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following: | 67
    Accidents in loading, discharging or handling cargo, or in bunkering; | 68
    Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons; | 69
    Explosions on shipboard or elsewhere; | 70
    Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any | 71
    latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part); | 72
    Breakdown of or accidents to nuclear installations or reactors not on board the insured Vessel; | 73
    Contact with aircraft, rockets or similar missiles, or with any land conveyance. | 74
    Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder; | 75
    Negligence of Masters, Officers, Crew or Pilots; | 76
provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them. | 77

**COLLISION AND TOWER'S LIABILITY**

    And it is further agreed that: | 78
    (a)  if the Vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow), or shall | 79
        strand her tow or shall cause her tow to come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any | 80
        other loss or damage to her tow or to the freight thereof or to the property on board, and the Assured or the Surety, in consequence of the | 81
        insured Vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums | 82
        we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as our | 83
        subscriptions hereto bear to the value of the Vessel hereby insured, provided always that our liability in respect of any one such casualty shall not | 84
        exceed our proportionate part of the value of the Vessel hereby insured. | 85
    (b)  in cases where, the liability of the Vessel has been contested or proceedings have been taken to limit liability with the consent in writing of a | 86

OMOH0004 Ed. 8-1-76
Page 2 of 5

© 1976 The Travelers Indemnity Company. All rights reserved.

majority (in amount) of the Underwriters on the hull and machinery, we will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay. 87 88

When both vessels are to blame, then, unless the liability of the Owners of one or both of such vessels becomes limited by law, claims under the Collision and Tower's Liability clause shall be settled on the principle of Cross-Liabilities, as if the Owners of each vessel had been compelled to pay to the Owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance of sum payable by or to the Assured in consequence of such casualty. 89 90 91 92

It is hereby further agreed that the principles, involved in this clause shall apply to the case where two or more of the vessels involved are the property, in part or in whole, of the same Assured, all questions of responsibility and amount of liability as between such Vessels being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by a majority (in amount) of the Underwriters on hull and machinery; the two Arbitrators so chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding. 93 94 95 96 97 98

Provided always that this Collision and Tower's Liability clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay, or shall pay: 99 100

I. for loss, damage or expense to vessel(s) in tow owned (other than vessel(s) bareboat chartered to others), bareboat chartered, managed or operated by the Assured and/or its affiliated and/or subsidiary companies and/or corporations, and to cargo, owned by the Assured and/or its affiliated and/or subsidiary companies and/or corporations on board vessel(s) in tow of the Vessel hereby insured; or 101 102 103

II. in consequence of, with respect to, or arising out of: 104

(a) removal or disposal of obstruction, wrecks or their cargoes under statutory powers or otherwise pursuant to law; 105
(b) cargo, baggage or engagements of the insured Vessel; 106
(c) loss of life, personal injury or illness; 107
(d) the discharge, spillage, emission or leakage of oil, petroleum, products, chemicals or other substances of any kind or description whatsoever. 108

Provided, further that Exclusions II (d) shall not apply to actual physical loss of or damage to such substance (if liability therefore is otherwise covered under the attached Policy) except to the extent that such loss or damage arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in Exclusion II (d) 109 110 111

## GENERAL AVERAGE AND SALVAGE

General Average and Salvage shall be payable in accordance with the laws and usages of the port of New York, but excluding wages, provisions, fuel and engine stores during detention however caused. 112 113

And it is further agreed that in the event of salvage, towage or other assistance being rendered to the Vessel hereby insured by any vessel belonging in part or in whole to the same owners or charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the manner above provided for under the Collision and Tower's Liability clause, and the amount so awarded so far as applicable to the interest hereby insured shall constitute a charge under this Policy. 114 115 116 117

When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribution (except in respect to amounts made good to the Vessel) or Salvage, shall not exceed that proportion of the total contribution due from the Vessel which the amount insured hereunder bears to the contributory value; and if, because of damage for which the Underwriters are liable as Particular Average, the value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this Policy shall first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount bears to the contributory value. 118 119 120 121 122 123

## SUE AND LABOR

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment. 124 125 126 127

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value. 128 129 130 131

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel. 132 133 134 135 136 137

## SEAWORTHINESS

The Underwriters shall not be liable for any loss, damage or expense arising out of the failure of the Assured to exercise due diligence to maintain the Vessel in a seaworthy condition after attachment of this Policy; the foregoing, however, not to be deemed a waiver of any warranty of seaworthiness implied at law. 138 139 140

## WATCHMAN

It is agreed that when this Vessel is tied up or moored, it shall be at all times in charge of a watchman in the employ of the Assured, whose duty it shall be to make careful examination of the Vessel throughout at reasonable intervals, including inspection of the bilges. 141 142

**CHANGE OF OWNERSHIP**

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be 143
chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or 144
withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, 145
flag, management, charter, requisition or classification; provided, however, that in the event of an involuntary temporary transfer by requisition or 146
otherwise, without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such transfer. 147
This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between the 148
time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against the 149
transferee or charterer in respect of all or part of such loss as is recoverable from the transferee of charterer, and in the proportion which the amount 150
insured hereunder bears to the Agreed Value. 151

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another, 152
and it shall not apply to any internal changes within the offices of the Assured. 153

**ADDITIONAL INSURANCES**

It is a condition of this Policy that there shall be no other insurance against physical loss or damage to the Vessel for or on account of the 154
Assured except that the Assured may, without prejudice to this Insurance, insure: 155

(a)   War, Strikes and related risks not covered by this Policy; 156
(b)   Risks identical to those covered by this Policy for the difference in amount, if any, between the "AMOUNT INSURED HEREUNDER" and the 157
"AGREED VALUE"; 158

provided that any breach of the above condition shall not afford the Underwriters any defense to a claim by a mortgagee who has accepted this Policy 159
without knowledge of such breach. 160

**CLAIMS (GENERAL PROVISIONS)**

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the 161
Underwriters, and: 162

(a)   where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire; 163
(b)   the Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured 164
for the actual additional expense of the voyage arising from compliance with the Underwriter's requirement); 165
(c)   the Underwriters shall have the right of veto in connection with any repair firm proposed; 166
(d)   the Underwriters may take tenders or may require tenders to be taken for the repair of the Vessel, in which event, upon acceptance of a 167
tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent. per annum on the amount insured, for 168
each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent 169
that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the 170
Underwriters' approval. 171

Due credit shall be given against the allowance in (b) and (d) above for any amount recovered: 172
(1) in respect of fuel, stores, and wages and maintenance of the Master, Officers and Crew members allowed in General or Particular Average, 173
(2) from third parties in respect of damages for detention and/or loss of profit and/or running expenses; for the period covered by the allow- 174
ances or any parts thereof. 175

No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers and Crew, except when incurred solely for 176
the necessary removal of the vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and 177
maintenance will be allowed only while the vessel is under way. 178

General and Particular Average shall be payable without deduction, new for old. 179

The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found. 180

No claim shall in any case be allowed in respect of scraping or painting the Vessel's bottom. 181

In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for use on board the Vessel and for which the 182
Assured has assumed responsibility, claim shall not exceed (1) the amount the Underwriters would pay if the Assured were owner of such equipment or 183
apparatus, or (2) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less. 184

No claim for unrepaired damage shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period 185
of this Policy and left unrepaired at the expiration thereof shall be demonstrated by the Assured to have diminished the actual market value of the 186
Vessel on that date if undamaged by such perils. 187

**TOTAL LOSS**

There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed 188
Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising from the 189
same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be claimed separately 190
under the Sue and Labor clause. 191

In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of 192
the damaged or break-up value of the Vessel or wreck shall be taken into account. 193

In the event of Total Loss (actual or constructive), no claims to be made by the Underwriters for freight, whether notice of abandonment has been 194
given or not. 195

In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this 196
Policy. 197

© 1976 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000055

## SUBROGATION

Upon making any payment under this Policy the Underwriters shall be vested with all of the Assured's rights of recovery against any person, corporation, vessel or interest, and the Assured shall execute and deliver such instruments and papers as the Underwriters shall require and do whatever else is necessary to secure such rights at the time of payment or subsequent thereto. At the option of the Underwriters, such payment may be made by means of a loan receipt repayable only out of any recovery made by the Underwriters as aforesaid. Such loan receipt shall be in the customary form permitting Underwriters to bring suit in the name of the Assured of the Assured at the latter's own cost and expense.

Any agreement, contract or act, past or future, express or implied, by the Assured whereby any right of recovery of the Assured against any person, corporation, vessel or interest is released, decreased, transferred or lost which would, on payment of claim by the Underwriters, belong to the Underwriters but for such agreement, contract or act shall render this Policy null and void as to the amount of any such claim, but only to the extent and to the amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of the Underwriters, but the Underwriters' right to retain or recover the full premium shall not be affected.

## LITIGATION   AND DEFENSE

The Underwriters shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the Assured and third parties concerning any claim, loss or interest covered by this Policy, and the Underwriters shall have the direction of such litigation or negotiations. If the Assured shall fail or refuse to settle any claim as authorized by the Underwriters, the liability of the Underwriters to the Assured shall be limited to the amount of which settlement could have been made.

No suit, action or proceedings brought by the Assured against the Underwriters for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months after the Underwriters have denied liability for payment of claim; except that in the case of a claim arising under the Collision and Tower's Liability clause, no suit or action shall be sustainable unless brought within twelve (12) months next after the Assured shall have discharged this liability. Provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

## WAR,  STRIKES  AND  RELATED  EXCLUSIONS

The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy.

This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:

(a) Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or

(b) Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or

(c) Any mine, bomb or torpedo not carried as cargo on board the Vessel; or

(d) Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter; or

(e) Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or

(f) Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power, malicious acts or vandalism; or

(g) Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (g) not to exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority maintaining naval, military or air forces in association with a power.

If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force.

OMOH0004 Ed. 8-1-76
© 1976 The Travelers Indemnity Company. All rights reserved.
Page 5 of 5

SUNCOAST 000056

SUNCOAST 000057

AMERICAN INSTITUTE                                              87 B-46
S. R. & C. C. ENDORSEMENT (HULLS)                              (Revised)

(September 8, 1959)

_____

        In consideration of an additional premium, as provided below, this insurance is
extended to cover additional risks, from and after **February 6, 2013**
in accordance with the following clause:

        "This insurance also covers damage to or destruction of the property insured directly
        caused by strikers, locked out workmen, or persons taking part in labor disturbances
        or riots or civil commotions or caused by vandalism, sabotage, or malicious
        mischief, but excluding civil war, revolution, rebellion or insurrection, or civil strife
        arising therefrom, and warranted free from any claim for delay, detention or loss of
        use, and free from all loss, damage or expense caused by any weapon of war
        employing atomic or nuclear fission and/or fusion or other reaction or radioactive
        force or matter.

        Notwithstanding the exclusions in the F. C. & S. Clause in the within policy
        'vandalism,' 'sabotage,' and 'malicious mischief,' as used herein, shall be construed to
        include wilful or malicious physical injury to or destruction of the described property
        caused by acts committed by an agent of any Government, party or faction engaged
        in war, hostilities, or other warlike operations, provided such agent is acting secretly
        and not in connection with any operations of military or naval armed forces in the
        country where the described property is situated."

        Until further notice the Assured shall pay, for the additional protection afforded by
the above clause, an additional premium of **INCL** percent.  The Underwriters have the right
nevertheless to change this rate at any time on 15 days written notice to the Assured; but
the Assured shall have the option to cancel this endorsement as of the time when such
change of rate would take effect, provided previous notice of such cancellation be given to
the Underwriters.  The rate may be changed as above notwithstanding strikes, labor troubles
or civil commotions, on board the vessel or elsewhere, may be threatened or actually exist
either at the time when such notice is given or when it takes effect.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
conditions, provisions, agreements or limitations of the above mentioned policy, other than
as above stated.

_____

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13  00:00  001 |

OMOH0105 Ed. 9-8-59
© 1959 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

SUNCOAST 000058

SUNCOAST 000059

## SCHEDULE OF VESSELS

### 02/06/13   -  02/06/2014

| Item No. | Vessel  Name | Hull  Amount Insured | Hull Deductible | Hull Rate | Hull Premium | P & I Limit | P & I Deductible | P & I Premium |
|---|---|---|---|---|---|---|---|---|
| 1. | Barge "Flag 4000" | $1,000,000. | $10,000. | Agreed | $12,500.00 | $1,000,000 | $10,000. | $ 3,000.00 |
|  |  |  |  |  |  |  | BI $10,000. PD |  |
| 2. | Tug "Billy G" | $  350,000. | $10,000. | Agreed | $35,000.00 | $1,000,000 | $10,000. | **$18,500. |
|  |  |  |  |  |  |  | BI $10,000. PD |  |
|  | TOTAL | $1,350,000. |  |  | $47,500.00 |  |  | $21,500.00 |

**Includes 5 Crew

Each vessel separately insured.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective  Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC |  | Processing  Date 06/09/13   00:00   001 |

**SCHEDULE OF VESSELS**
**(continued)**

| Item No. | Vessel Name | Hull Amount Insured | Hull Deductible | Hull Rate | Hull Premium | P & I Limit | P & I Deductible | P & I Premium |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

© 2008 The Travelers Indemnity Company

SUNCOAST 000061

**SERVICE OF SUIT CLAUSE**

It is agreed that in the event of the failure of Insurers hereon to pay any amount claimed to be due hereunder, Insurers hereon, at the request of the Insured (or Reinsured) will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon:

and that in any suit instituted against any one of them upon this contract.  Insurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of Insurers in any suit and/or upon the request of the Insured (or Reinsured), to give a written undertaking to the Insured (or Reinsured), that they will enter a general appearance upon Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Insurers hereon designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of Insurance (or Reinsurance), and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective  Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13  00:00  001 |

OMOH0123 Ed. 7-05
® 2005 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

SUNCOAST 000062

SUNCOAST 000063

American Institute                                                                    6Z-4
DELIBERATE DAMAGE - POLLUTION HAZARD (HULL)

(February 1, 1976)

In consideration of premium paid it is understood and agreed that, subject to the terms and conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective   Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing  Date 06/09/13  00:00  001 |

OMOH0139 Ed. 2-1-76
® 1976 The Travelers Indemnity Company. All rights reserved.                 Page 1 of 1

SUNCOAST 000064

SUNCOAST 000065

PROTECTION AND INDEMNITY

SP-23
(Revised 1/56)

**Amount Insured** $1,000,000.00

**Premium** $PER SCHEDULE

**Rate** AGREED

**SUNCOAST SHIPPING, LLC**

hereinafter called the Assured.

Loss, if any,
payable to

or order.

In the sum of **PER SCHEDULE**  Dollars

at and from the **6TH**  day of **FEBRUARY** , **2013**, at **12:01AM LS** time

until the **6HT**  day of **FEBRUARY** , **2014**, at **12:01AM LS** time

against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth, in respect of the vessel called the **PER SCHEDULE OF VESSELS**
(Tonnage  ) or by whatsoever other names the said vessel is or shall be named or called.

In consideration of the Stipulations Herein Named and of **PER SCHEDULE**  Dollars, being Premium at the rate of **AGREED**

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

Loss of Life,
injury and
Illness

(1) **Liability for loss of life of, or personal injury to, or illness of, any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others.**

Protection hereunder for loss of life or personal injury arising in connection with the handling of cargo of the vessel named herein shall commence from the time of receipt by the Assured of the cargo on dock or wharf or on craft alongside the said vessel for loading thereon and shall continue until delivery thereof from dock or wharf of discharge or until discharge from the said vessel on to another vessel or craft.

Hospital, medical,
or other
expenses

(2) **Liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel named herein or any other person. Liability hereunder shall also include burial expenses not exceeding Two Hundred ($200) Dollars, when necessarily and reasonably incurred by the Assured for the burial of any seaman of said vessel.**

Repatriation
expenses

(3) **Liability for repatriation expenses of any member of the crew of the vessel named herein, necessarily and reasonably incurred, under statutory obligation, excepting such expenses as arise out of or ensue from the termination of any agreement in accordance with the terms thereof, or by mutual consent, or by sale of the said vessel, or by other act of the Assured. Wages shall be included in such expenses when payable under statutory obligation, during unemployment due to the wreck or loss of the said vessel.**

**Name of Insured**   **Policy Number** ZOH-15N11069-13-ND   **Effective Date** 02/06/13
SUNCOAST SHIPPING, LLC   **Processing Date** 06/09/13  00:00  001

OMPI0001 Ed. 1-56
© 1956 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000066

Damage to other vessel or property on board caused by collision

**(4) Liability for loss of, or damage to, any other vessel or craft, or to the freight thereof, or property on such other vessel or craft, caused by collision with the vessel named herein, insofar as such liability would not be covered by full insurance under the AI HULL CLAUSES (6/2/77)AI TUG FORM (53R-1)**
(including the four-fourths running-down clause).

(a) Claims under this clause shall be settled on the principle of cross-liabilities to the same extent only as provided in the running-down clause above mentioned.

(b) Claims under this clause shall be divided among the several classes of claims enumerated in this policy and each class shall be subject to the deduction and special conditions applicable in respect of such class.

(c) Notwithstanding the foregoing, if any one or more of the various liabilities arising from such collision has been compromised, settled or adjusted without the written consent of the Assurer, the Assurer shall be relieved of liability for any and all claims under this clause.

Damage to other vessel or property on board not caused by collision

**(5) Liability for loss of or damage to any other vessel or craft, or to a property on such other vessel or craft, not caused by collision, provided such liability does not arise by reason of a contract made by the assured.**

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance application on the property.

Damage to docks, piers, etc.

**(6) Liability for damage to any dock, pier, harbor, bridge, jetty, buoy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever, except another vessel or craft, or property on another vessel or craft.**

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

Removal of wreck

**(7) Liability for cost or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law, provided, however, that:**

(a) There shall be deducted from such claim for cost or expenses, the value of any salvage from or which might have been recovered from the wreck, inuring, or which might have inured, to the benefit of the Assured.

(b) The Assurer shall not be liable for such costs or expenses which would be covered by full insurance under the **AI HULL CLAUSES (6/2/77)AI TUG FORM** or claims arising out of hostilities or war-like operations, whether before or after declaration of war.

Cargo

**(8) Liability for loss of, or damage to, or in connection with cargo or other property, excluding mail and parcel post, including baggage and personal effects of passengers, to be carried, carried, or which has been carried on board the vessel named herein:**

**Provided, however, that no liability shall exist under this provision for:**

Specie, bullion, precious stones, etc.

(a) Loss, damage or expense arising out of or in connection with the custody, care, carriage or delivery of specie, bullion, precious stones, precious metals, jewelry, silks, furs, bank notes, bonds or other negotiable documents or similar valuable property, unless specially agreed to and accepted for transportation under a form of contract approved, in writing, by the Assurer.

© 1956 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000067

Refrigeration

(b) Loss of, or damage to, or in connection with cargo requiring refrigeration unless the space, apparatus and means used for the care, custody, and carriage thereof have been surveyed by a classification surveyor or other competent disinterested surveyor under working conditions before the commencement of each voyage and found in all respects fit, and unless accepted for transportation under a form of contract approved, in writing, by the Assurer.

Passengers' effects

(c) Loss, damage, or expense in connection with any passenger's baggage or personal effects, unless the form of ticket issued to the passenger shall have been approved, in writing, by the Assurer.

Stowage in improper places

(d) Loss, damage, or expense arising from stowage of underdeck cargo on deck or stowage of cargo in spaces not suitable for its carriage, unless the Assured shall show that every reasonable precaution has been taken by him to prevent such improper stowage.

Deviation

(e) Loss, damage, or expense arising from any deviation, or proposed deviation, not authorized by the contract of affreightment, known to the Assured in time to insure specifically the liability therefor, unless notice thereof is given to the Assurer and the Assurer agrees, in writing, that such insurance is unnecessary.

Freight on cargo short delivered

(f) Freight on cargo short delivered, whether or not prepaid or whether or not included in the claim and paid by the Assured.

Misdescription of Goods

(g) Loss, damage, or expense arising out of or as a result of the issuance of Bills of Lading which, to the knowledge of the Assured, improperly describe the goods or their containers as to condition or quantity.

Failure to surrender Bill of Lading

(h) Loss, damage, or expense arising out of delivery of cargo without surrender of Bill of Lading.

**And provided further that**

(aa) Liability hereunder shall in no event exceed that which would be imposed by law in the absence of contract.

Protective clauses required in contract of affreightment

(bb) Liability hereunder shall be limited to such as would exist if the Charter Party, Bill of Lading or Contract of Affreightment contained the following clause (in substitution for the clause commonly known as the Jason Clause):

"In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the shipowner is not responsible, by statute or contract or otherwise, the shippers, consignees or owners of the cargo shall contribute with the shipowner in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo,"

When cargo is carried by the vessel named herein under a bill of lading or similar document of title subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as is imposed by said Act, and if the Assured or the vessel named herein assumes any greater liability or obligation than the minimum liabilities and obligations imposed by said Act, such greater liability or obligation shall not be covered hereunder.

When cargo is carried by the vessel named herein under a charter party, bill of lading or contract of affreightment not subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as would exist if said charter party, bill of lading, or contract of affreightment contained the following

Limit per package

clauses: a clause limiting the Assured's liability for total loss or damage to goods shipped to Two Hundred and Fifty ($250) Dollars per package, or in case of goods not shipped in packages, per customary freight unit, and providing for pro rata adjustment on such basis for partial loss or damage; a clause exempting the Assured and the vessel named herein from liability for losses arising from unseaworthiness, even though

existing at the beginning of the voyage, provided that due diligence shall have been exercised to make the vessel seaworthy and properly manned, equipped, and supplied; a clause providing that the carrier shall not be liable for claims in respect of cargo unless notice of claim is given within the time limited in such Bill of Lading and suit is brought thereon within the limited time prescribed therein; and such other protective clauses as are commonly in use in the particular trade; provided the incorporation of such clauses is not contrary to law.

The foregoing provisions as to the contents of the Bill of Lading and the limitation of the Assurer's liability may, however, be waived or altered by the Assurers on terms agreed, in writing.

**Assured's own cargo**

(cc) Where cargo on board the vessel named herein is the property of the Assured, such cargo shall be deemed to be carried under a contract containing the protective clauses described in the preceding paragraph, and such cargo shall be deemed to be fully insured under the usual form of cargo policy, and in case of loss thereof or damage thereto the Assured shall be insured hereunder in respect of such loss or damage only to the extent that they would have been covered if said cargo had belonged to another, but only in the event and to the extent that the loss or damage would not be recoverable under a cargo policy as hereinbefore specified.

**Cotton Bills of Lading**

(dd) The Assured's liability for claims under Custody Cotton Bills of Lading issued under the conditions laid down by the Liverpool Bill of Lading Conference Committee, is covered subject to previous notice of contract and payment of an extra premium of two (2) cents per ton gross register per voyage, but such additional premium shall be waived provided every bale is re-marked at a port of shipment on another portion of the bale.

**Land transportation not included**

(ee) No liability shall exist hereunder for any loss, damage or expense in respect of cargo or other property being transported on land or on another vessel.

No liability shall exist hereunder for any loss, damage or expense in respect of cargo before loading on or after discharge from the vessel named herein caused by flood, time, windstorm, earthquake, fire, explosion, heat, cold, deterioration, collapse of wharf, leaky shed, theft or pilferage unless such loss, damage or expense is caused directly by the vessel named herein, her master, officers or crew.

**Customs, immigration or other fines or penalties**

**(9) Liability for fines and penalties, including expenses necessarily and reasonably incurred in avoiding or mitigating same, for the violation of any of the laws of the United States, or of any State thereof, or of any foreign country; provided, however, that the Assurer shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.**

**Mutiny or other misconduct**

**(10) Expenses incurred in resisting any unfounded claim by the master or crew or other persons employed on the vessel named herein, or in prosecuting such persons in case of mutiny or other misconduct.**

**Extraordinary expenses in case of quarantine, etc.**

**(11) Liability for extraordinary expenses resulting from outbreak of plague or other contagious disease, including such expenses incurred for disinfection of the vessel named herein or persons on board, or for quarantine, but excluding the ordinary expenses of loading and/or discharging, and the wages and provisions of crew and passengers; each claim under this provision is subject to a deduction of Two Hundred ($200) Dollars. It is provided further, however, that if the vessel named herein be ordered to proceed to a port when it is or should be known that calling there will subject the vessel to the extraordinary expenses above mentioned, or to quarantine or disinfection there or elsewhere, the Assurer shall be under no obligation to indemnify the Assured for any such expenses.**

© 1956 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000069

Deviation for purpose of landing injured

(12) Net loss due to deviation incurred solely for the purpose of landing an injured or sick seaman in respect of port charges incurred, insurance, bunkers, stores, and provisions consumed as a result of the deviation.

Cargo's proportion of general average

(13) Liability for, or loss of, cargo's proportion of general average, including special charges, in so far as the Assured cannot recover same from any other source; subject however, to the exclusions of Section (8) and provided, that if the Charter Party, Bill of Lading or Contract of Affreightment does not contain the quoted clause under Section 8 (bb) the Assurer's liability hereunder shall be limited to such as would exist if such clause were contained therein.

Costs and Charges

(14) Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

## GENERAL CONDITIONS AND/OR LIMITATIONS

Prompt notice of claim

Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

Settlement of claims

The Assured shall not make any admission of liability, either before or after any occurrence, which may result in a claim for which the Assurer may be liable. The Assured shall not interfere in any negotiations of the Assurer, for settlement of any legal proceedings in respect of any occurrences for which the Assurer is liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured are obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance. If the Assured shall fail or refuse to settle any claim as authorized by Assurer, the liability of the Assurer to the Assured shall be limited to the amount for which settlement could have been made.

Assured to assist with evidence in defense, etc.

Whenever required by the Assurer the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Assurer in the defense of any claim or suit or in the appeal from any judgement, in respect of any occurrence as hereinbefore provided.

Law costs

The Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible. The cost and expense of prosecuting any claim in which the Assurer shall have an interest by subrogation or otherwise, shall be divided between the Assured and the Assurer, proportionately to the amounts which they would be entitled to receive respectively, if the suit should be successful.

The Assurer shall be liable for the excess where the amount deductible under this policy is exceeded by (A) the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or (B) the amount paid by the Assured either under a judgement or an agreed settlement based on the liability covered herein including all costs, expenses of defense and taxable disbursements.

Subrogation

The Assurer shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such

© 1956 The Travelers Indemnity Company. All rights reserved.
SUNCOAST 000070

payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure to the Assurer such rights.

The Assurer shall be entitled to take credit for any profit accruing to the Assured by reason of any negligence or wrongful act of the Assured's servants or agents, up to the measure of their loss, or to recover for their own account from third parties any damage that may be provable by reason of such negligence or wrongful act.

**Cover elsewhere**

Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the Assurer, under this policy, there shall be no contribution by the Assurer on the basis of double insurance or otherwise.

**Assignments**

No claim or demand against the Assurer under this policy shall be assigned or transferred, and no person, excepting a legally appointed receiver of the property of the Assured, shall acquire any right against the Assurer by virtue of this insurance without the expressed consent of the Assurer.

**Actions against Assurers**

No action shall lie against the Assurer for the recovery of any loss sustained by the Assured unless such action is brought against the Assurer within one year after the final judgement or decree is entered in he litigation against the Assured, or in case the claim against the Assurer accrues without the entry of such final judgement or decree, unless such action is brought within one year from the date of the payment of such claim.

**Time limitation**

The Assurer shall not be liable for any claim not presented to the Assurer with proper proofs of loss within six (6) months after payment thereof by the Assured.

**Lay-up returns**

At the expiration of this policy, the Assurer is to return **NOT APPLICABLE** for each thirty (30) consecutive days during the term of this insurance the vessel may be laid up in a safe port; or **NOT APPLICABLE** for each thirty (30) consecutive days during the term of this insurance the vessel may be laid up in a safe port without loading and/or discharging and without crew or cargo on board, provided the Assured give written notice to the Assurer as soon as practicable after the commencement and the termination of such lay-up period.

**Cancellation provisions:**

(a) If the vessel named herein should be sold or requisitioned and this policy be cancelled and surrendered, the Assurer to return **NOT APPLICABLE** for each thirty (30) consecutive days of the unexpired term of this insurance.

(b) In the event of non-payment of premium within sixty (60) days after attachment, this policy may be cancelled by the Assurer upon five (5) days' written notice being given the Assured.

(c) In the event that Sections 182 to 189, both inclusive, of U.S. Code, Title 46, or any other existing law or laws determining or limiting liability of shipowners and carriers, or any of them, shall, while this policy is in force, be modified, amended or repealed, or the liabilities of shipowners or carriers be increased in any respect by legislative enactment, the Assurer shall have the right to cancel said insurance upon giving **N/A** days' written notice of their intention so to do, and in the event of such cancellation, make return of premium upon a pro rata daily basis.

**Notwithstanding anything to the contrary contained in this policy, no liability attaches to the Assurer:**

For any loss, damage, or expense which would be payable under the terms of the **AI HULL CLAUSES (6/2/77)** form of policy on hull and machinery, etc., if the vessel were fully covered by such insurance sufficient in amount to pay such loss, damage, or expense.

For any loss, damage or expense sustained by reason of capture, seizure, arrest, restraint or detainment, or the consequence thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained in consequence of placing the

© 1956 The Travelers Indemnity Company. All rights reserved.

SUNCOAST 000071

vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether the Assured's liability therefor is based on negligence or otherwise, and whether before or after a declaration of war.

For any loss, damage, or expense arising from the cancellation or breach of any charter, bad debts, fraud of agents, insolvency, loss of freight hire or demurrage, or as a result of the breach of any undertaking to ,load any cargo, or in respect of the vessel named herein engaging in any unlawful trade or performing any unlawful act, with the knowledge of the Assured.

For any loss, damage, expense, or claim arising out of or having relation to the towage of any other vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this policy for loss of life or personal injury to passengers and/or members of the crew of the vessel named herein arising as a result of towing.

For any claim for loss of life or personal injury in relation to the handling of cargo where such claim arises under a contract of indemnity between the Assured and his sub-contractor.

It is expressly understood and agreed if and when the Assured under this policy has any interest other than as a shipowner in the vessel or vessels named herein, in no event shall the Assurer be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled.

Unless otherwise agreed by endorsement to this policy, liability hereunder shall in no event exceed that which would be imposed on the Assured by law in the absence of contract.

Liability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured.

Attached to and forming part of Policy No. **ZOH-15N11069-13-ND** of **TRAVELERS PROPERTY CASUALTY CO. OF AMERICA**

© 1956 The Travelers Indemnity Company. All rights reserved.
SUNCOAST 000072

SUNCOAST 000073

AMERICAN  INSTITUTE
POLLUTION EXCLUSION CLAUSE (P&I)
AND  BUY BACK ENDORSEMENT A

(JULY 4, 1976)

25

This Policy will not indemnify the Assured against any sum(s) paid, nor insure against any liability, with respect to any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.

IN  CONSIDERATION OF AN  ADDITIONAL PREMIUM OF $INCLUDED     THE ABOVE POLLUTION EXCLUSION CLAUSE (P&I) SHALL NOT APPLY TO SUMS PAID, OR LIABILITY OF THE ASSURED:

1) For loss of life of, or bodily injury to, or illness of, any person; or,

2) For loss, damage or expense to any cargo or property carried on board the insured Vessel(s); or,

3) For loss, damage or expense to any cargo or property on board any other vessel or contained or stored ashore unless such sums are paid, or liability is imposed, as a result of contact of such cargo or property with oil, petroleum products, chemicals or other substances of any kind or nature whatsoever arising in consequence of their sudden and accidental discharge, emission, spillage or leakage upon or into the seas, waters, land or air; or

4) For contamination of any cargo or property resulting from the pumping of oil, petroleum products, chemicals or any other substances of any kind or nature whatsoever directly into any other vessel, or between tanks of the Insured Vessel(s), or into storage tanks or receptacles ashore or elsewhere.

PROVIDED that such sums, or such liability, are insured elsewhere under the terms and conditions of this Policy.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective  Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13  00:00  001 |

OMPI0101 Ed. 7-4-76
© 1976 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

SUNCOAST 000074

SUNCOAST 000075

**CREW WARRANTY**

---

In consideration of the premium charged, it is warranted that coverage hereunder is provided for not more than 5    crew members on board the insured vessel(s) at any one time.  In the event that additional crew are to be covered hereunder, the Insured shall give prior notice to this Company and pay such additional premium as required. If the Insured shall fail to give prior notice and at the time of loss in respects to crew there are more crew onboard, this insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of the accident.  Coverage herein provided excludes the vessel owner(s).

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

---

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13   00:00   001 |

OMPI0111 Ed. 7-08
© 2008 The Travelers Indemnity Company. All rights reserved.

Page 1 of 1

SUNCOAST 000076

SUNCOAST 000077

PROTECTION AND INDEMNITY AND HULL COLLISION, AND/OR HULL
COLLISION AND TOWERS, COMBINED SINGLE LIMIT COVERAGE
ENDORSEMENT

This endorsement applies to all vessels covered in the Protection & Indemnity and Hull and
Machinery section of this policy as follows:

With respect to coverage afforded by the Protection & Indemnity clauses, and to the
Collision Liability and/or Collision and Towers Liability coverage provided under the Hull and 
Machinery clauses; it is hereby understood and agreed that regardless of the number or types
of liabilities insured against hereunder, or the number of vessels or risks involved, this
Company shall not be liable under this policy for more than $1,000,000.00 any one
accident or series of accidents arising out of the same occurrence.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/09/13 00:00 001 |

OMPI0113 Ed. 2-11
© 2011 The Travelers Indemnity Company. All rights reserved.                                    Page 1 of 1

SUNCOAST 000079

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-14360-Civ-Middlebrooks/Lynch

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

       Plaintiff,

v.

SUNCOAST SHIPPING, LLC,

       Defendant.

_____/

### FINAL DEFAULT JUDGMENT

Based on the Court's Order Granting Plaintiff Travelers Property Casualty Company of America's ("Travelers") Motion for Final Default Judgment against Defendant Suncoast Shipping, LLC ("Suncoast"), it is hereby

**ORDERED AND ADJUDGED** that

1. Final judgment is entered in favor of Travelers and against Suncoast.

2. Travelers' Marine Hull and Protection & Indemnity Policy No. ZOH-15N11069-13-ND issued to Suncoast Shipping, LLC and effective February 6, 2013 to October 2, 2013 is void *ab initio*; and

3. Travelers has no obligation to Suncoast or with respect to the Tug under the Policy.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 15 day of May, 2015.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record